1832.

WHITE
*v.*
GERAERDT.

WHITE *vs.* GERAERDT and others.

The ancient mode of attachment and sequestration may still be resorted to in a proper case.

This court can, through a sequestration, lay hold of property of every description, any where within its jurisdiction, belonging to a party in contempt for not obeying a decree; and it also has power to apply it in satisfaction. And where the delay of an attachment and sequestration would jeopardize the rights of the opposite party, the latter may, in the first instance, file a fresh bill, thereby restraining the property and party in contempt, and thus obtain the effect of the former decree.

*April 25, 1832.*

*Chose in action.*

*Sequestration.*

*Substitution.*

*Liability of the property of a dismissed trustee who does not satisfy a decree.*

ALMIRA Geraerdt, the daughter of the defendant Hannah Geraerdt, was the owner of a moiety of an estate in the island of St. Croix in the West Indies.

In the month of September one thousand eight hundred and twenty she intermarried with Augustus C. Rainetaux; but previous to the marriage, she and her husband entered into articles, by which the income of the estate was settled upon them for their lives, with remainder to the issue of the marriage. The deed of settlement contained a provision, allowing the property to be sold, if it should be deemed advisable, and the proceeds invested in other real estate or in public funds or other safe security, for the purposes of the trust. The mother, Hannah Geraerdt, was made the trustee under this settlement.

In the month of January one thousand eight hundred and twenty-four, the trust estate was sold, in conformity with the provisions of the settlement, for the sum of twenty-three thousand seven hundred and fifty dollars; a part of which was paid down, while the balance, amounting to sixteen thousand two hundred and fifty dollars, was secured by the bond of the purchaser and made out in favor of the mother, Hannah Geraerdt, as such trustee. It was made payable in eight annual and equal instalments, on the first days of May in each year, with interest; the obligors reserving to themselves the right of paying

the whole or any part of the money sooner, and of making the payments in cash or by bills on New York at from thirty to sixty days sight.

A child was born of this marriage in the month of April one thousand eight hundred and twenty-five; and as Mrs. Geraerdt had received a considerable portion of the money, which she neglected or refused to apply to the purposes of the trust, a bill was filed against her, in the court of chancery of this State, in the name of the child, in order to compel her to account for the same and to fulfil the trusts which she was charged with having violated.

By an interlocutory decree, which was made on the fourteenth day of July one thousand eight hundred and twenty-seven, she was ordered to account before a master, who was likewise directed to report a fit person to serve as trustee in her stead.

The cause having been brought to a final hearing upon the master's report, it was decreed, on the tenth day of June one thousand eight hundred and twenty-eight, amongst other things, that Hannah Geraerdt should pay to the then complainant, within sixty days from the date of the decree, the sum of seven thousand five hundred and twenty-five dollars, being the balance reported to be due from her as trustee to the then complainant; and that the said Hannah should pay to her daughter Almira, who was made a co-defendant, the sum of eleven hundred and fifty-nine dollars, being the balance reported to be due from her as trustee to Almira; and also pay to Augustus C. Rainetaux, the husband, and who was also a party defendant, the sum of one hundred and fifty-nine dollars, being the balance reported to be due to him from her as such trustee, with interest on those sums respectively from a certain day then past. By the same decree, the complainant was appointed trustee under the marriage settlement in the place of Mrs. Geraerdt, with power to take possession of all the estate, property, moneys, effects, bonds, notes, mortgages and choses in action appertaining to the trust; and it required her to deliver over the same to him on oath under the direction of a master. She was likewise decreed to pay the costs of the suit.

After the decree was made and before its provisions were

1832.

WHITE
*v.*
GERAERDT.

complied with, Mrs. Geraerdt received a remittance from St. Croix in a bill of exchange on Messrs David Rogers & Son, at ninety days sight, for five thousand five hundred and three dollars and forty-eight cents, which was presented to and accepted by them on the eighteenth day of June one thousand eight hundred and twenty-eight.

On the twentieth day of the same month, Mrs. Geraerdt was examined before the master in relation to the property in her possession, with a view to its being delivered over in satisfaction of the decree ; and it appeared from the examination, that the money received by her as trustee had been partly expended by her in living and partly lost in speculations, so that she was unable to pay the amounts decreed against her. It likewise appeared, in answer to questions put by the counsel for the complainant, that the remittance just received, in the bill upon Rogers & Son, was no part of the proceeds of her daughter's moiety of the estate in trust under the marriage settlement, but was the balance arising from the sale of the other moiety which had belonged to her son John Peter Geraerdt, and which she held or was entitled to in her own right under an assignment from her son.

Shortly after this examination, Mrs. Geraerdt received another remittance from St. Croix in another bill of exchange on Messrs Rogers & Son for two thousand four hundred and ninety-four dollars and ninety cents, which was presented to and accepted by them on the ninth day of July one thousand eight hundred and twenty-eight. This bill, it was admitted in the present suit, belonged to the trust estate, and was in payment of one of the instalments due on the bond of the purchasers of it.

The new trustee (the present complainant) took measures, by notice, to prevent the negociation of these several bills of exchange by Mrs. Geraerdt; and, in the latter part of July one thousand eight hundred and twenty-eight, he filed his bill in this cause, for the purpose of laying hold of the money which was in the hands of the acceptors as being a part of the trust estate or to which he had become entitled by reason of the fraudulent

conduct and insolvency of Mrs. Geraerdt. At this time there were three children of the marriage.

1832.

WHITE
v.
GERAERDT.

When the bills of exchange became due, the money was paid into court, where it remained, subject to order or decree in this suit.

The answer of Mrs. Geraerdt admitted, that the remittance of two thousand four hundred and ninety-six dollars was a part of the trust estate; and she consented it should be paid over to the complainant. In relation to that sum, there was, therefore, no dispute: it was only with respect to the five thousand five hundred and three dollars and forty-eight cents, the controversy existed.

The court considered there was sufficient evidence, from her answer and otherwise, as to the latter amount's being a remittance on her own account, and that it formed no part of the property of which she was trustee. And his honor considered the question before him to be, whether the court, under the circumstances, could intercept this money and apply it towards the payment of the debt decreed against her?

Mr. *W. Mulock*, for the complainant.

Mr. *R. Bogardus*, for the defendants.

THE VICE-CHANCELLOR. When this suit was instituted, the time allowed for paying the money decreed had not elapsed, but Mrs. Geraerdt had submitted to an examination before the master; and from which it appears, she was insolvent and destitute of all means, except about four hundred dollars and the money payable by the bill of exchange in question. There was no disposition to apply these funds to the proper purpose; on the contrary, she afterwards sent to demand both bills of exchange and sought to get them into her possession against the notice which the complainant had previously given. There is reason to believe her intention was to withhold the whole from the substituted trustee.

The justice of the case certainly requires the money should be applied towards discharging the debt established by the de-

*July* 23.

1832.

WHITE
*v.*
GERAERDT.

cree. If the money were in her hands, the power of this court would be sufficient to reach it: for, besides the statutory mode of enforcing decrees of this court, by executions similar in all respects to executions upon judgments at law, there is no doubt but the ancient process of attachment and sequestration may still be resorted to. Although, in a great measure, superseded, this course of proceeding has not been prohibited or abolished. It remains to be pursued whenever it may be deemed necessary. After a decree for the payment of money or performance of a duty, the goods of the party, his money and the rents and profits of his lands may be applied, upon a sequestration, to the payment of the demand: 2 *Brown's Ch. Pr.* 738; 2 *Harr.* (*Newl. ed.*) 334; and, although it has sometimes been questioned whether choses in action are liable to a sequestration, there can be no objection to it upon principle. It is analogous to the power which this court now constantly exercises over the equitable interests and things in action of the debtor, where a judgment at law has been recovered and proves unavailing upon the writ of *fieri facias.* The same reason exists for aiding the creditor by decree; and, surely, this court will go as far in that case as in the other, in order to compel satisfaction out of a species of property which cannot be reached by ordinary execution.

There are cases to show how this has been done through the medium of a sequestration. *Tothill* mentions several, where money was decreed to be delivered to a plaintiff out of other men's hands, in the nature of a sequestration; as well as, where, after a defendant was committed for non-performance of a decree, the court ordered a sequestration in order to levy upon moneys of his in the hands of other men: see under the head of "*Money*" and "*Sequestration*," *Toth.* 135 and 175. And in *Hyde* v. *Pettit,* 1 *Ch. Ca.* 91, it was stated, that a sequestration had been extended so far of late as to sequester things in action, which no execution at common law could reach, and the consequence whereof, it was argued, would be destructive to trade and commerce; but the court entertained no such apprehension and held a sequestration to be a necessary process of the court. In *Simmons* v. *Lord Kinnaird,* 4 *Ves.* 735, these cases, and some

others before Lords *Macclesfield* and *Bathurst,* were referred to in argument, and the effect of them, as binding authorities, was questioned. Lord *Eldon,* however, declined deciding any of the points which were there presented, and overruled the demurrer upon technical grounds; at the same time intimating, pretty clearly, the strong inclination of his mind to favor the process of sequestration to the full extent desired. Lord *Talbot,* in *Martin* v. *Kerridge,* 3 *P. W.* 240, admitted the propriety of a sequestration where a party taken into custody by process of attachment continued in prison without paying the debt.

I have no hesitation, therefore, in saying, this court is competent, through the medium of sequestration, to lay hold of property of every description any where within its jurisdiction, belonging to a party in contempt for not obeying a decree; and also, has power to apply it in satisfaction of the debt or duty decreed against such person.

Is there then or can there be any valid objection to the exercise of the same power in another way, in order to attain the same end? I think not, provided special circumstances require it. In the present case, instead of waiting until an execution upon the decree or process of attachment could issue and be followed up, if necessary, by sequestration, (which, if pursued, would, there is every reason to believe, have been too late for any beneficial purpose, the present complainant having just been appointed trustee and entitled to receive the money,) he files the bill in this cause in his own name, in order to reach the trust fund, obtain the effect of the decree in the former cause, and get an injunction restraining the defendant, in the mean time from receiving the money payable to her by virtue of the bills of exchange.

The objection is, that no such bill can be sustained, except in favor of a judgment creditor at law after his remedy there has been fairly exhausted. This objection only goes to the matter of jurisdiction. If the debt or demand is purely of legal cognizance, it is undoubtedly necessary for a party to pursue his remedy in a court of law, by recovering a judgment and having an execution returned unsatisfied, before he can ask for the aid of this court; but, where a demand is originally an equitable

one, and the party has proceeded here and obtained a decree for the payment of the money, it can no longer be a question whether this court has jurisdiction to entertain a new bill for a discovery of property liable to satisfy the decree.

Under the circumstances of this case, I think it was proper in the complainant to exhibit a new bill. There are, certainly, strong claims upon the justice and equity of the court to sustain it. The defendant has received a large amount of money, as trustee under a marriage settlement for the benefit of her daughter and grand children, the issue of the marriage, of whom there are now three, which she was bound by every tie of filial affection, as well as of moral and legal obligation, to preserve for their use; but which she has misapplied in violation of her trust—and she is now confessedly insolvent. A sum of money belonging to her happens to be within the jurisdiction of this court, not sufficient to make a full satisfaction, but, which, if applied, will lessen the debt to a considerable extent, and she refuses to permit it to be so applied: although no other creditor is shown to have any claim upon it. Under these circumstances, a court of equity is called upon to exercise its authority in favor of a *feme covert* and of infant *cestui que trusts*, (peculiar objects of its care,) and to appropriate the money to their use as a substitute for what has been improperly taken from them.

In analogy to the practice in cases of sequestration and upon the principle of substitution, I am of opinion the court is fully authorized so to decree. I shall direct the complainant's costs of this suit to be paid out of the five thousand five hundred and three dollars and forty-eight cents, and the residue of the money to be paid over to the complainant, as so much on account of the former decree, and the same to be held by him as a part of the trust estate; and, likewise, that the sum of two thousand four hundred and ninety-six dollars be also paid over to him as a further part of the trust estate.