## WILLIAM H. KEIGHLER and others, *vs.* WILLIAM J. WARD and others.

The writ of *sequestration* is in full force in Maryland, both as a *mesne* process against a party in contempt and as a judicial writ to enforce the performance of a decree, and in its latter office is analogous to an execution at law.

The 4th sec. of the act of 1818, ch. 193, dispenses with demand or notice of the decree before issuing process thereon required by the previous act of 1785, ch. 72, sec. 25, and applies to process of *sequestration* as well as other writs.

Jurisdiction once rightfully asserted by a court of equity, and which would lead to a settlement of all the questions which might arise out of the subject matter in controversy, will exclude all jurisdiction over it by other courts for *similar purposes.*

But proceedings in equity, which contemplate giving *force and efficacy to a deed*, will not prevent the deed from being *assailed* as fraudulent in another court, or by another proceeding in equity.

*Choses in action*, under certain circumstances, may be *sequestered;* if the party in whose hands the *chose* is admits the debt to be due, and is willing to pay it over under the order of the court, it is subject to *sequestration*, but *not otherwise.*

Where the party in whose hands the *chose* is denies that it is due to the decree-debtor, and sets up a deed of trust, under which he claims title, and avers it to be valid, the court will not, upon return to the writ of *sequestration*, inquire into the *validity* of such deed and determine whether it be *fraudulent* or not.

It is the *resistance* of the party holding the *chose* that defeats the proceeding by *sequestration*, and not the *grounds* upon which the resistance rests.

But where a party levies a *sequestration* upon such a *chose in action* he acquires thereby an *inchoate equitable lien or priority* to the fund contingent upon the result of the question, whether the deed is void or not.

In such case the return to the writ of *sequestration* should not be quashed, but the court should protect the inchoate equitable lien or priority thus acquired, by *retaining the case* until, by other proceedings, the validity of the deed can be determined.

APPEAL from the Court of Chancery.

This appeal was taken from an order of the court below quashing the return to a writ of *sequestration* under the following circumstances:

The appellants obtained a decree in the court of chancery on the 13th of May 1851, against Royston Betts for $21,111.26,

under a bill filed in that court on the 16th of January 1849, and on the 6th of September 1851, filed their petition in the case, setting out the decree and the failure of Betts to pay the same, and praying for the writ of *sequestration* to enforce payment thereof. On the same day the writ was issued by order of the chancellor, and on the 15th of the same month was laid in the hands of William J. Ward and the agents of certain fire insurance companies, and return made accordingly.

Afterwards, on the 22nd of April 1853, the appellants filed another petition, in which, after setting out the decree, the issue, service and return of the *sequestration*, and insisting that thereby the moneys and effects of Betts in the hands of Ward and the insurance companies became subject to the payment of the decree, states, that since the return the said corporations have paid all the moneys of Betts, in their hands, to Ward, who is about to apply them to other purposes; pretending they were not in his hands at the date of the service of the writ, whereas petitioners are advised said moneys were in the hands of the corporations at the time of such service and were paid over to Ward with notice thereof, and are bound in his hands as fully as they were in the hands of the corporations; but to conclude all questions on the subject they pray that another writ of *sequestration* may be issued, to be also laid in the hands of Ward; and that on service thereof he may be required to show forth in certainty what moneys and effects of Betts are in his hands, and how and when he received them, and to bring the same into court to be applied to the decree. The chancellor on the same day ordered the suit to issue as prayed, and directed Ward to answer the petition on or before the 17th of May following. The writ was accordingly issued and laid in the hands of Ward on the 27th of April 1853, and also in the hands of the Franklin Fire Insurance Company on the 29th of the same month.

On the 17th of May 1853, Ward appeared and filed his answer, in which, after admitting the decree and the issue and service of the writ as stated in the petition, he files and submits a copy of a deed of trust from Betts to him, and of his report as trustee thereunder, made to the Superior Court of Baltimore

city, and the order of said court directing notice to the creditors of Betts, and the notice given conformably thereto, which report exhibits a full account of his trust and the residue remaining in his hands for distribution. He also admits service of the second writ of *sequestration*, and refers to his said report as giving in detail the disclosures required by the order of the chancellor, and asked for in the petition. He states that the original writ of *sequestration* issued after the execution of the deed of trust from Betts to him, and such being the case he submits that his course, preparatory to distribution, in pursuance of the deed, was right and proper, and that such distribution ought to be made, and asks, if requisite, that a hearing may be granted him in the premises before final action thereon by the chancellor.

The report referred to in this answer, and filed with it, shows a balance of $3986.58 in the hands of the trustee for distribution under the deed of trust. The deed of trust from Betts to Ward, also filed with this answer, bears date the 29th of January 1851, and conveys to Ward "all the right, title, claim, demand and interest" of Betts, in and to certain described insurance policies issued in favor of Betts, on which suits were then pending in the Circuit Court of the United States for the Maryland District, and to the money payable and recoverable thereunder *in trust* to receive and apply the same, *first*, to pay the expenses and counsel fees in the suits on the policies then pending; *secondly*, to pay the trustee's commission of eight *per cent.*; *thirdly*, to pay $3000, with interest, to a named creditor in New York, "*and* the residue to divide, without preference, among all the other creditors of said Betts who may come in and release, as hereinafter stated, according to their respective claims, without priority or preference save as by law established; *provided, however*, that each of said creditors claiming or receiving any thing, dividend or distributive share under the provisions of this deed or out of said trust fund, shall simultaneously therewith execute and deliver to said Betts, his heirs and representatives, a good and sufficient release of all claim or demand of any nature against said Betts, which could or might be made because of said claims; and

that in case of the refusal of any of said creditors so to release, the distributive share or shares of the party so refusing shall be divided proportionably among the other creditors so assenting."

Afterwards, on the 27th of February 1854, Ward made a motion in the case to quash the writ of *sequestration,* and the return thereof so far as relates to him: 1st. Because the same, was improvidently issued. 2nd. Because he has no property or effects of said Betts in his hands bound by said writ. 3rd. Because he had no property or effects in his hands, when said writ issued, to which said Betts had any claim, and has not since had any such property or effects. And 4th. For other reasons apparent on the face of the proceedings.

On the 9th of March 1854, the chancellor, (JOHNSON,) delivered an opinion in the case, which is reported in 4 *Md. Ch. Dec.,* 87, and passed an order directing the return to the writs, so far as the same relates to or affects Ward, to be quashed. From this order the complainants appealed.

The cause was argued before ECCLESTON, TUCK and MASON, J.

*Thos. S. Alexander* and *John V. L. McMahon* for the appellants, argued:

1st. That the deed of trust from Betts to Ward was fraudulent and void as to the appellants, the creditors of Betts:—1st, because it exacts releases of the creditors and at the same time does not profess to be, and is not shown or pretended to be, a conveyance *of all the debtor's property.* Being a deed of *specifics,* it is void *on its face;* it must stand or fall as it thus appears, and you cannot go into outside testimony to show that it does embrace the whole property of the grantor. But if it can be helped out by extrinsic evidence, the *onus* is upon the parties claiming under the deed, and they have offered no such proof in this case. 3 *Md. Rep.,* 48, 51, *Sangston vs. Gaither. Ibid.,* 12, 34, 35, *Green & Trammell, vs. Trieber.* 2nd. Because it does not merely prefer the releasing creditors to those not releasing, but excludes the latter from all benefit and

33    v.8

*substantially reserves the surplus to the debtor.*   17 *Verm.*, 310, *Hall vs. Denison.   Ibid.*, 390, *Dana vs. Lull.*   17 *Ala.*, 549, *West vs. Snodgrass.*   3rd.   Because it limits no time for its acceptance.

2nd.   It is said the writ of *sequestration* in this case improvidently issued, because no notice of the decree had been given, as required by the act of 1785, ch. 72, sec. 25.   But the petition for the writ alleges, that Betts had full knowledge of the decree and refused to perform it, and *notice*, therefore, appears on the face of the petition.   No *exception* was taken by Ward either to the writ or the return; no point was made in the court below as to the regularity of the writ, and no question of that kind is now before this court.   But if there was there is nothing in it.   The 4th sec. of the act of 1818, ch. 193, dispenses with notice and demand before *issuing process*, required by the 25th sec. of the act of 1785, ch. 72, and this refers to *all process* which could be issued under the act of 1785.   The writ, therefore, being regularly issued, we say, that on the case before the chancellor at the time of quashing the return, the appellants' right to their sequestration against the trustee, Ward, involved no question as to the right thus to reach the unpaid debts or *choses in action* of Betts, and thus to determine the rights and liabilities as between Betts and his debtors, the insurance companies, but merely the question, whether, after Betts' said debtors had paid over what was due by them to Betts' trustee under his said deed, this process would lie to affect the funds in the hands of said trustee thus received, and claimed and held by the trustee under no other title.   The fund was not a *chose in action* due Betts, but *money* paid over by him to Ward. The case, therefore, presents no other right or title as against the appellants' right thus to obtain and appropriate the funds in Ward's hands as Betts' property, as regards them, except the title given by Betts to Ward by that deed, and this deed being in law fraudulent as to the appellants, the law finding it to be so treats the property as if no such deed had been made. 3 *Md. Rep.*, 409, *Spindler vs. Atkinson.   Ibid.*, 45, *Sangston vs. Gaither.   7 Do.*, 380, *American Exchange Bank vs. Inloes.*   The question then is, can we get this money by *process*

*of sequestration?*  As to this we insist, that the sequestration issued in execution of the appellants' decree was proper process to reach any funds or moneys of Betts in the hands of Ward, and the only question, therefore, is, whether the appellants are by law permitted, *under that proceeding*, to deny the validity of the deed, and thus necessarily to show that the funds in Ward's hands are still the property of Betts as it regards the appellants; and lastly, that under that process against the trustee, the holder and representative of the title granted by that deed, and upon his answer admitting the funds in hand and setting up that title under the deed, the appellants were entitled in that proceeding to impeach the title set up under that deed as fraudulent and void as to them.  In attachments *at law* against such a trustee, the right of the attaching creditor under that process to impeach the deed as fraudulent as to creditors, and thus to obtain condemnation of the property or funds in the hands of the trustee, has been recognised and sanctioned in this court, and therefore, *a fortiori*, does it exist under this the analogous but more comprehensive process of execution of a court of equity.  In England, where sequestration issues on final decree, it is in the nature of *process of execution.*  There all process of execution in equity was founded upon *contempt*, and the writ of *sequestration* is one of such processes.  2 *Daniel's Ch. Pr.*, 1244, 1253.  8 *Bac. Abr.*, *(Bouv. Ed.,)* 629, 630.  Where the debt is *admitted to be due*, all the authorities say that the writ lies to affect the *choses in action* of the decree-debtor.  So *money in hand* admitted to be due. *Tothill*, 175.  2 *Daniel's Ch. Pr.*, 1255, 1256, 1260, 1261, 1262, and the cases there cited.  This, indeed, was admitted by the chancellor in his opinion.  4 *Md. Ch. Dec.*, 91.  1 *Beavan*, 263, *Wilson vs. Metcalfe.*  But the title may also be inquired into.  A writ of *sequestration* may be levied on property fraudulently aliened, and if the fraudulent alienation be set up as a defence, it may be inquired into upon the return of the writ.  2 *Daniel's Ch. Pr.*, 1266, 1268 to 1272, and the cases there cited.  25 *Cond. Eng. Ch. Rep.*, 461, *Empringham vs. Short*, was the case of *fraud in fact* in regard to deeds, and Vice-Chancellor Wigram declared, that he had not the

slightest doubt of the jurisdiction to try the question, and ordered it to be tried.   Such is the English law on the subject. Now what is the Maryland law?   It is said the writ is *obsolete* in this State.   The act of 1785 recognises, adopts and modifies it so as to make it the most comprehensive of equity processes. It might with as much propriety be said that this *act of Assembly* is *obsolete*.   This law puts it beyond all doubt that it is a writ of *execution*.   It was intended to reach by it something more than could be reached by a *fi. fa.*, for it speaks of personal estate and *"effects"* as including something more than *visible, tangible property*.   And moreover, this act gives the chancellor the power to order it as an *immediate* execution. For the American authorities on this subject, see 1 *Hoffman's Ch. Pr.*, 158, *note* 1.   1 *Edw. Ch. Rep.*, 340, *White vs. Geraerdt*.  12 *Metcalf*, 363, *Grew vs. Breed*.  11 *Paige*, 603, *Hosack vs. Rogers*.   That Ward is the only party necessary to be brought before the court in order to assail the deed, see 4 *Barbour*, 237, *Russell vs. Lasher*, and cases there cited.

3rd.  That by the proceedings the appellants had under their sequestrations as process of execution, acquired at least an inchoate equitable right to priority of payment of their *decree* out of the funds in the hands of the trustee, which the court below ought to have respected and protected as fully as priorities acquired by the ineffectual levy of executions at law to affect equitable interests, and that even if conceded, (as it is not,) that under this process and the trustee's answer setting up as his only title this deed alleged to be fraudulent on its face, the court below could not adjudicate finally on that title, still it erred in quashing the return and thereby destroying the appellants' priority, and should, on the contrary, have preserved it, by directing such other proceeding in equity or at law as might be deemed necessary to the proper adjudication of that title, and by retaining the sequestration to await the issue of that proceeding.  10 *G. & J.*, 251, *Harris vs. Alcock*.   2 *Md. Ch. Dec.*, 260, *Gill vs. McAttee, et al.*  1 *Edw. Ch. Rep.*, 340, *White vs. Geraerdt*.  8 *Bac. Abr.*, *(Bouv. Ed.,)* 629, 630. 25 *Cond. Eng. Ch. Rep.*, 461, *Empringham vs. Short.*   27 *Maine*, 539, *Sargent vs. Salmond.*  3 *Paige*, 320, *Clarkson vs. De Peyster.*

4th. That the trustee's report to the Superior Court of Baltimore city, and the order of the court thereon, were no bar to the further continuance of the sequestration against the trustee, and did not justify the court below in quashing it. 7 *Md. Rep.*, 380, *American Exchange Bank vs. Inloes.*

*Wm. A. Talbott* and *George W. Dobbin* for the appellees, argued:

1st. That the deed from Betts to Ward is not on its face a void instrument, but may be supported by proof that it conveys all the property of the grantor; that it reserves nothing to the grantor, and gives to the creditors the whole time till the payment of the dividend under it to accept its terms, and is therefore beneficial to them. The *intent to defraud* must be gathered from the face of the instrument. The statute itself requires this intent. Upon the face of this deed there is no such intent. The fact that it does not upon its face convey *all the property* of the grantor may make it *voidable*, but does not make it *void*. There is no principle of law and no decision that makes it void. The fact that no time is limited in it for acceptance of its terms, is no objection, for the law presumes that the trust will be executed in a reasonable time. On this point we refer to 3 *Md. Rep.*, 48, *Sangston vs. Gaither. Ibid.*, 12, *Green & Trammell, vs. Trieber.*

2nd. That the writ of *sequestration* is a process of contempt, used to enforce obedience on the part of recusant parties to *mesne* process or final decree of the court of chancery, and that having compelled the submission of the recusant by depriving him of the possession and enjoyment of his property, the law proceeds to execute its final decree by the appropriation of the property thus in possession to the satisfaction of the decree; that the efficacy of the writ depends entirely upon the power of taking into possession the property of the person against whom it is issued, and it has no application therefore to a *chose in action*, when the person against whom the action exists *denies* the right and *withholds* the possession. *Mr. Alexander*, in his *Book on Chancery Practice*, says that this writ is *obsolete* in Maryland, and there never has been any

instance of its having been obtained before the present case. Prior to the year 1839 all process in England to enforce decrees was process of contempt. Then for the first time process of *execution* was given. The process of sequestration was peculiarly a process of contempt. It did not issue to the sheriff, but to four persons named by the *plaintiff*, who are to enter and take the property and keep it till the party purges himself of the contempt. It has no return day, but exists as long as the party stands out in contempt. Such was the law in England prior to the passage of the new rules in 1839. As soon as our legislature passed the act of 1785, giving the *fi. fa.* and *ca. sa.*, from that moment this writ commenced to become *obsolete.* That act speaks of it as a writ of contempt. It may issue and be levied upon *choses in action* in certain cases. Where the holder admits that the property belongs to the decree-debtor it may properly lie. But where the holder denies title and claims the property himself, and refuses to give it up, in such cases we say it does not lie. There has been no case adduced in which a disputed *chose* has been the subject of the writ or could be affected by it. In support of these views we refer to 2 *Daniel's Ch. Pr.*, 1248, 1249, 1255, 1256, 1 *Hoffman's Ch. Pr.*, 158, *note* 1. 1 *Barbour's Ch. Pr.*, 70, 71. 2 *Simons*, 55, *Johnson vs. Chippindall.* 3 *Swans.*, 309, *Francklyn vs. Colhoun.* 1 *Beavan*, 269, *Wilson vs. Metcalfe.* 4 *Ves.*, 735, *Simmonds vs. Kinnaird.* 1 *Ball & Beatt.*, 387, *McCarthy vs. Goold.* 1 *Ves.*, 198, *Dundas vs. Dutens.* 1 *Ves., Sen.*, 180, *Wharam vs. Boughton.* The act of 1785 does not convert the writ from a process of *contempt* to one of *execution;* this act speaks throughout of *clearing the contempt* whenever this suit is spoken of. As to the point that the appellants have acquired an *inchoate right* by the ineffectual levy of the writ, the case of *Burns vs. Robinson,* 7 *Irish Eq. Rep.*, 188, is a sufficient reply. This case very distinctly says there is *no right* acquired by the party at whose instance the writ issues. Equity will only aid an ineffectual levy where the levy has been made upon the *thing itself,* but by this *writ* the party acquires no such right.

3rd. That the writ of *sequestration* being a process of *con-*

*tempt*, it is not within the meaning of the act of 1818, ch. 193, sec. 4, which dispenses with demand of a compliance with a decree prior to issuing process of *execution*, and no *notice* of this decree having been given as required by the act of 1785, ch. 72, sec. 25, the writ issued improvidently.

4th. That this case does not fall within the reason of the *American Exchange Bank vs. Inloes*, 7 *Md. Rep.*, 380, which determines that the pendency of an equity proceeding to administer the trust, will not prevent an attaching creditor from attacking the validity of a deed of trust, as the attachment is a new suit appropriate to try the issue of the validity of the deed, whilst this is an attempt to engraft on the execution of final process a new, complicated and important inquiry involving the interests of parties not before the court.

5th. Because the sheriff's return is not conformable to the exigency of the writ which commands the sheriff to "collect, take, and get into his hands, the goods, chattels and personal estate, and detain and keep the same," &c., and the law, unlike the attachment law with reference to garnishees, furnishes no means by which to reach a *chose in action* in the hands of one who is unwilling to bring the money or thing into court.

MASON, J., delivered the opinion of this court.

The questions involved upon this appeal have never before, as we are aware, arisen in any court in Maryland. They relate to the nature, office and applicability, of the writ of *sequestration*, as a part of our equity jurisprudence. We have no doubt that this writ is in full force in this State, both as a *mesne* process against a party in contempt, as well as a judicial writ to enforce the performance of a decree, and in its latter office may be said to be analogous to an execution at law. The process of sequestration came with our chancery system from England, and has since been fully recognised and adopted by our legislation, as appears from the act of 1785, ch. 72, sec. 25. The circumstance, that it has never been resorted to in practice in this State, does not, on that account, render it inoperative or powerless. In *Bacon's Abr.*,

*8th Vol.*, 630, it is said of this writ that it has "become the common process in courts of equity, and may be said to be two-fold; that is, it issues either as a *mesne* process on the defendant's default in not appearing, or not answering, after the whole process of contempt hath spent against him; or it issues as a judicial process in pursuance of a decree, and to enforce the performance of it; and it is the execution and life of a court of equity; and as it is the fruit of a long suit it is to be favored, and in this case it is said to be analogous to an execution at common law."

Unless we can discover a purpose on the part of our legislature, as developed by our act of 1785, to alter the character and office of this writ, and the practice under it, as shown by the English authorities, we must look for the general principles regulating the subject to the adjudged cases and elementary works in England. How far then have the English doctrines in regard to sequestration been affected or altered by our act of Assembly, is to be our first inquiry.

The 25th sec. of the act of 1785 requires as a condition upon which this writ, as well as all other process upon decree, shall issue, that notice shall first be served upon the defendant of the passage of the decree, by an attested copy thereof; and by the 26th section it is provided, "that in all cases in chancery the process of commission of rebellion, and sergeant-at-arms, shall be omitted as unnecessary." These, we believe, are the only two statutory modifications made in the law which we need notice; and by the act of 1818, ch. 193, sec. 4, the demand or notice of the decree, as required by the previous act, has been dispensed with, and the party obtaining the decree is entitled to process thereon, without such demand or notice, and this embraces the process of sequestration as well as other writs.

Of one thing we are certain, that there is nothing in the provisions of either of the acts referred to which at all affect the questions involved in the present appeal. They are to be determined therefore upon English authority.

There appears to be no objection taken to any of the proceedings in this case prior to the decree of the 13th of May 1851,

against the defendant, Betts.  The case stands then upon the concession that those proceedings are regular, and that Betts is justly indebted to the complainants in the amount of the decree.

Upon this decree a writ of *sequestration* was issued on the 22nd of April 1853, and at once laid in the hands of W. G. Ward and the Franklin Fire Insurance Company, who, as was alleged, held certain moneys and effects of Betts, the defendant, which were subject, by this process, to be made available towards the satisfaction of the decree.  Ward filed his answer, setting up a deed of trust from Betts to him, his report as trustee under said deed to the Superior Court of Baltimore, and the order of that court for notice to creditors, &c.  He states that the writ of *sequestration* issued after the deed from Betts was executed, and he submits that he proceeded regularly in the Superior Court, and that the distribution of the trust estate ought to be made under the direction of that court; he also avers, that *he has no property or effects of Betts in his hands bound by or subject to said writ.*  For these reasons he moved that the return of the writ be quashed. The chancellor did accordingly quash the return to the writ of *sequestration,* and from that decision the present appeal was taken.

In the argument of this cause the *five* prominent questions discussed, were:—1st.  Did not the jurisdiction rightfully assumed by the Superior Court of Baltimore over the trusts, as set out in the deed to Ward, appropriate to that court the settlement of the questions raised on this appeal, to the exclusion of the court of chancery?  2nd.  Is the process of sequestration, in any of its aspects, applicable to a case like the present?  3rd.  But if so, as Ward *denies* in his answer, that the *choses in action* sought to be reached were Betts', would this proceeding be effectual to test the question of title to those *choses in action?*  4th.  Whether the deed of trust was valid and vested a good title in Ward, as against all parties claiming subsequent to its execution?  And 5th.  Whether by virtue of the decree and the proceedings under the sequestration, the complainants acquired any inchoate equitable priority upon

the ,funds in the hands of Ward, which upon a subsequent proceeding might be made available in payment of their decree, provided they cannot be reached under the present proceeding?

The first question is abundantly answered by the decision of this court, in the case of the *American Exchange Bank vs. Inloes*, 7 *Md. Rep.*, 380. A court of equity cannot, by taking hold of a case for one purpose, draw to itself an exclusive jurisdiction over every other discordant question which might arise out of it. It is true that a jurisdiction once rightfully asserted by a court of equity, and which would lead to a settlement of all the questions which might arise out of the subject matter in controversy, will exclude all jurisdiction over it, by other courts, for similar purposes, and the reason of this, which is to prevent a number of conflicting proceedings about the same thing, is wise and just. But that a proceeding like this one pending in the Superior Court, which contemplated giving force and efficacy to a deed, can be said to draw within its ample folds the considerations of questions which assail the very existence of the deed itself, is a proposition not for one moment to be entertained.

The second question we have already determined, to the extent of saying, that the writ of *sequestration* was in force in .Maryland. But it is contended, that under no circumstances are *choses in action*, such as stock, debts, &c., subject to sequestration. This was, no doubt, at one time held. 8 *Bacon's Abr.*, 632. But a different or modified doctrine now prevails, and it may be said to be the result of the best adjudged cases in England, that *choses in action*, under certain circumstances, may be sequestered. The chancellor's views upon this particular point are correct. It may be stated as a settled point, upon strict authority, that if the party in whose hands the *chose* is admits the debt to be due to the defendant, and is willing to pay the same over under the order of the court, it becomes thereby subject to sequestration, but not otherwise. 2 *Daniell's Chan. Prac.*, 1261. 1 *Hoffman's Chan. Prac.*, 157. *White vs. Geraerdt*, 1 *Edw. Chan. Rep.*, 340. *Johnson vs. Chippindall*, 2 *Sim.*, 55. 1 *Beavan*, 369.

This then leads us to the third inquiry, whether Ward's

denial of his liability to Betts defeats the writ? Clearly, by this denial, the case is made to fall within the general principle just stated, that there can be no sequestration against a party denying his indebtedness, unless it may be shown by some further proceeding that the objection is untenable, as will be more fully explained hereafter. The appellants seek to except this case from the operations of the general rule, upon the ground, that as Ward has thought proper to exhibit a deed in support of his title to the property, which upon its face, as is alleged, is void for fraud, therefore the law will treat the property as if no deed had been executed. This objection simply resolves itself into the general proposition, that *choses in action* held by fraud are subject to sequestration, notwithstanding the party holding them denies the charge and resists the proceeding, and thus resistance, resting upon such a ground, is held to be an exception to the general rule, that *choses* in the hands of an unwilling party cannot be sequestered. We cannot discover any authority or good reason for such a proposition. The general principle is doubtless designed to avoid such collateral proceedings and inquiries as would unavoidably result from such resistance. What questions are more fraught with difficulty or attended with more protracted controversies than questions arising out of allegations of fraud? And this is abundantly illustrated by the question of fraud raised upon this appeal. It has elicited a most able and prolonged argument, and if the zeal manifested by the counsel be any index of their real convictions upon the subject, they must have been sincere in maintaining the conflicting positions assumed by them, and thus we have a clear case of *controversy* presented to us, which, if we were now to decide upon this collateral inquiry, we would upturn the established doctrines and practice upon the subject. It is no answer to our objection to say, that because we can see from the case made, (if such were the fact,) that Ward has no title, therefore the sequestration must go against him. Such a view might apply to nearly every case, or would make the question depend upon the *degree* of difficulty which each case would present, while the law says that *the resistance* must defeat the proceeding, and not the *grounds* upon which the resis-

tance rests.   The appellants say the deed is void upon its face, and the appellee denies it; if we were to look into the deed for the purpose of determining this point, we would be simply *settling* the question, and what more could we do in regard to any other controversy that might arise out of such a proceeding? The authorities seem to leave the determination of this question, whether to abide the sequestration or not, entirely with the party affected by it.   If he may resist the writ without assigning any reasons for doing so, is it not unreasonable that he should be worse off for having assigned insufficient or bad reasons?

The fourth question, as to the validity of the deed, after what has already been said, ought not to be decided upon the present appeal.   To do so would be to disregard what we have laid down under the previous head as the proper rule upon the subject.

The fifth and last ground taken in argument relates to the supposed inchoate equitable lien created by this proceeding upon the funds in the hands of Ward.   This is a most important proposition, and to some extent a new and unsettled one. *Daniell*, (2 *Vol.*, 1262,) says, that the question, "whether, when the party in possession of the *chose in action* refuses to admit, or disputes his liability, the court will authorise the institution of proceedings, either at law or in equity, for the purpose of enforcing the *sequestration* against such party, is a point which still appears to remain uncertain."   See also *Simmonds vs. Kinnaird*, 4 *Ves.*, 735.   *White vs. Geraerdt*, 1 *Edw. Ch. Rep.*, 336.

From the analogy of the case of *Harris vs. Alcock*, 10 *Gill & John.*, 226, and upon general principles of equity and justice, we are disposed to believe and do so accordingly decide, that the complainants have acquired, by virtue of the *sequestration*, an equitable lien or priority to the funds in controversy, contingent however upon the result of the question, whether the deed of trust from Betts to Ward is void or not.

The complainants having had a valid, equitable claim against Betts sought to enforce the same in the only court having ample jurisdiction over the subject, and having done so obtained a decree in chancery for the amount due them.   In order

to obtain, by due course of law, the fruits of their decree, they resorted to the only legal process suited to the emergencies of their case, namely, the writ of *sequestration*, which was laid upon property or effects in the hands of Ward, which belonged, as was alleged, to Betts. The efficacy of this writ is defeated, under a well settled principle of law, by Ward, who denies that the property is Betts', and in support of this denial relies upon the deed of trust. The complainants thus find the estate of Betts, or a large portion of it, which they consider, both in law and equity, bound for his debts, transferred beyond their reach, by means of what they allege to be a fraudulent conveyance. What is to be the consequence of this condition of things, provided the deed should turn out to be void? Are the complainants to lose the fruits of their vigilance, which, in every court, is preserved and protected, not from any laches, delay or mistake on their part, in pursuing their proper, legal remedies, but from a technical, and perhaps untenable objection, which could not have been averted, made by one, who, at best, is but a mere third party or stranger to the proceedings? Can it be said that these parties must abandon and lose all benefit resulting from this proceeding, shown to be regular and proper, up to the time of this objection, because of the interposition of such an objection on the part of Ward? If the remedy of these complainants had been at law, and they had obtained a judgment instead of a decree, an attachment by way of execution would have reached the funds in the hands of Ward, and notwithstanding any objection he might make the validity of the deed would have been inquired into, and if found void the funds would have been summarily condemned. Are we now to say that there are remedies at law in cases where there are none in equity? Without this equitable lien, which is contended for by the appellants, they would be either remediless or would be driven to a slow and tedious proceeding, instituted expressly to vacate the deed, which would result equally to the benefit of all creditors, while, in the mean time, more fortunate, though not more wise or vigilant creditors, would probably, by means of attachments, or otherwise, sweep away the debtor's whole estate.

The court of chancery could therefore properly have retain-ed this case until such other or additional proceedings could be had, at law or in equity, as the exigencies of the case might require, by which the question of the validity of the deed could be settled. Until this was done the court ought not to have quashed the return to the *sequestration,* but on the con-trary, we think, that the appellants had, under their process of *sequestration,* which, in this case, was in the nature of an execution or attachment at law, acquired, at least, an inchoate equitable lien or priority, which the court ought to have pro-tected until the final termination of the whole controversy. If the deed should be declared void, and the funds in the hands of Ward decided to belong to Betts, they should be distributed with reference to the priority or preference acquired by the complainants by virtue of their process of *sequestration.*

In the foregoing opinion we have said enough to dispose of the several questions as presented upon the present appeal. All questions arising out of the deed should be left, as we have said, open for future consideration upon proceedings hereafter to be instituted to test its validity.

> *Decree reversed and cause ordered to the*
> *Circuit Court of Baltimore city. The*
> *costs to be paid out of the estate.*

Eccleston, J., delivered the following separate opinion:

Although the recent English decisions have held that a *chose in action* may be made subject to the payment of a decree in equity, under a writ of *sequestration,* yet, in my opinion, the English and American authorities show it to be true, as a general rule, that the process of *sequestration* will be defeated if objected to by the person charged with being indebted to the defendant in the decree. In this case, however, the objection made by Ward is based upon the assignment or conveyance in trust, made to him by Betts, which instrument is alleged to be fraudulent and void.

A court of equity has long been considered the proper tribu-nal for deciding whether a conveyance is void for fraud. And as the instrument on which Ward bases his objection to the

*sequestration* has been alleged to be fraudulent, I think the chancellor should have retained the writ for the purpose of having the question of fraud settled; so that in case of a decision adverse to the validity of the conveyance the *sequestration* might then be available to the complainants, because of the removal of Ward's objection by a court having competent and appropriate jurisdiction in reference to matters of fraud.

Under the English practice certain preliminary steps were necessary for putting a defendant in contempt before a writ of *sequestration* could be issued against him; but by our acts 1785, ch. 72, sec. 25, and 1818, ch. 193, sec. 4, these preliminary steps are dispensed with; and therefore the present writ was not irregular for want of them.

Entertaining these views I think the order of the chancellor should be reversed and the cause remanded for further proceedings.