W. WYATT WILEY, and others, Trustees *vs.* THE BOARD OF COUNTY SCHOOL COMMISSIONERS OF ALLEGANY COUNTY.

*Injunction to restrain a Board of County School Commissioners from Converting a Public School House, used for District Primary School Purposes, to the use and purposes of a County High School—Construction of the Acts of 1872, ch. 377, and of 1874, ch. 463—Visitatorial Power of the State Board of Education.*

By the Act of 1872, ch. 377, sub-ch. 17, there are two classes of high schools contemplated; one, the district high school, and the other, the county high school; and the right and power to establish the latter is dependent upon no such conditions as the former. The appellees being clothed under this Act, in their discretion to establish a county high school, their determination upon the subject cannot be reversed or controlled by a Court of equity.

A public corporation, such as the appellees, incorporated for a great public purpose, and charged with the duty of applying and properly disbursing large amounts of public funds, for the accomplishment of particular objects, is required to act strictly within the authority delegated, and to apply the funds at its disposal for the purposes expressed, and for none other whatever. And if there be an attempt to apply the funds to objects not embraced within the power granted, or to objects within the power, but in total disregard of essential conditions prescribed by the statute to make it lawful to appropriate the funds, a Court of equity will interfere to restrain such action. But so long as such body of public functionaries confine themselves within the limits of the power delegated, the Court will not interfere with the exercise of their discretionary powers, or undertake to determine the question whether an act complained of be wise or unwise. good or bad.

Under the Acts of 1872, ch 377, sub-ch. 3, sec. 4, and of 1874, ch. 463, the State Board of Education have a visitatorial power of the most comprehensive character, and such power is, in its nature, sum-

26 **v. 51.**

Wiley, *et al.*, Trustees *vs.* Board Co. School Comm'rs of Allegany Co.

mary and exclusive. It is to obviate the consequences of disputes or contentions among those entrusted with the administration of the public school system, or between the functionaries and the patrons or pupils of the schools, that the visitatorial power is conferred; and wherever that power exists, and is comprehensive enough to deal with the questions involved in a controversy, Courts of equity decline all interference, and leave the parties to abide the summary decision of those clothed with the visitatorial authority.

APPEAL from the Circuit Court for Allegany County, in Equity.

The case is stated in the opinion of the Court.

The cause was submitted to BARTOL, C. J., BOWIE, MILLER, ALVEY and IRVING, J.

*R. Chew Jones*, for the appellants.

No counsel appeared for the appellees.

ALVEY, J., delivered the opinion of the Court.

The complainants file their bill as citizens and tax-payers, and also as trustees of a district school in the City of Cumberland, against the Board of County School Commissioners for Allegany County, praying an injunction to restrain the defendants from converting a public schoolhouse, which was, at the time of the filing of the bill, used for district primary school purposes, under the supervision of the complainants as trustees to the use and purposes of a high school.

1. In their capacity of tax-payers the complainants ask that the defendants be restrained, upon the ground that the latter are about proceeding to establish a high school in the City of Cumberland, when in fact there has been no presentation or donation by any election district or districts of a suitable building for the use and purposes of

such school, as contemplated by sub-ch. 17, sec. 1, of the Act of 1872, ch. 377; and that without such presentation of a suitable building for the purpose, the proposed act of the Board of County School Commissioners would be wholly without the warrant of law, and a gross mis-application of the public school fund under their control. But it is manifest that this ground of the complainants' application is based upon a misconception of what is the true construction of the sub-ch. 17, of the Act of 1872, ch. 377, Tit. "High Schools." By the first section of this sub-chapter, it is made the duty of the Board of County School Commissioners, whenever any election district, or any contiguous election districts, shall present a building for a high school, in said district or districts, to the Board of County School Commissioners, to accept the same, if in their judgment there be a necessity therefor, "and thereafter provide for maintenance of a high school in said district or districts, and the salaries of teachers out of the general School fund." And by the second section of the same sub-chapter, it is provided, that if the high school be established by a district or districts, the Board of County School Commissioners shall appoint three persons, who shall constitute a board of high school commissioners, whose duty, &c.; "but high schools established by the County shall be under the direct control of the Board of County School Commissioners." From these provisions of the statute it is plain, there are two classes of high schools contemplated by the law; one the district high school, and the other the county high school; and that the right and power to establish the latter is dependent upon no such conditions as the former. It is within the power and discretion of the Board of County School Commissioners to establish the county high school, whether the building therefor be donated or not; but their power to establish the district high school is made dependent upon the donation of the building by the election district or districts for

which such high school shall be established. And the Board of County School Commissioners having the power to establish a county high school, irrespective of the donation of the school-house, the question, whether the discretion of the board has been, or will be judiciously exercised or not, in respect to such school, is a subject with which a Court of equity has nothing to do. If the proposed act in establishing the high school be within the scope of the authority delegated, as it clearly is, it is not competent to a Court of equity to restrain the exercise of the discretion of the commissioners given by the statute, unless it be clearly shown that the power has been, or is about to be corruptly and fraudulently used. It is true, a public corporation, such as the Board of County School Commissioners, incorporated for a great public purpose, and charged with the duty of applying and properly disbursing large amounts of public funds, for the accomplishment of particular objects, is required to act strictly within the authority delegated, and to apply the funds at its disposal for the purposes expressed, and for none other whatever. And if there be an attempt to apply the funds to objects not embraced within the power granted, or to objects within the power, but in total disregard of essential conditions prescribed by the statute to make it lawful to appropriate the funds, a Court of equity will interfere to restrain such action. *Frewin vs. Lewis*, 4 *M. & Cr.*, 249, 254; *Atty. Gen. vs. Compton*, 1 *Y. & Col., C. C.*, 417; *Att. Gen. vs. Guardians of Poor of Southampton*, 17 *Sim.*, 6; *Att. Gen. vs. Mayor of Wigan, Kay*, 268, *S. C.*, 5 *D. M & G.*, 54. But so long as such body of public functionaries confine themselves within the limits of the power delegated, the Court will not interfere with the exercise of their discretionary powers, or undertake to determine the question whether the act complained of be wise or unwise, good or bad. Where the Legislature has confided the power of determining as to the wisdom and expediency of

an act authorized to be done, to a board of public functionaries, with them the decision of the question must rest. And that is the case here. The Board of County School Commissioners being clothed with power, in their discretion, to establish a county high school, their determination upon the subject cannot be reversed or controlled by a Court of equity.

2. The complainants failing to show a sufficient ground for the injunction in their character of tax-payers, the next inquiry is, whether they have shown any sufficient ground in their official character as trustees, holding their office by appointment of the Board of County School Commissioners. They allege in their bill that they are trustees of the district school about to be disturbed, and that the school-house proposed to be converted and appropriated to the use of the high school intended to be established, is occupied by the district school under their charge and supervision, and that the establishment of the high school will have the effect of breaking up the district school as now located, to the great inconvenience and detriment of the pupils attending it, and will, of course, deprive the complainants as trustees of their power and control over such district school-house. Now, however much this may be the subject of regret, it is quite clear, these allegations furnish no ground for the interposition of a Court of equity. The statutes under which the present school system of the State is organized have provided the mode and the agency for settling all such questions as this without resort to the Courts. By sub-chapter 3, sec. 4, of the Act of 1872, ch. 377, as amended by the Act of 1874, ch. 463, the State Board of Education are charged with the duty of seeing that the provisions of the statutes are faithfully carried into effect. They are required to make by-laws for the administration of the public school system, not at variance with the law; they have power to suspend or remove examiners or teachers; and then it is provided that

"they shall explain the true intent and meaning of the law, and they shall decide, without expense to the parties concerned, *all controversies and disputes that may arise under it.*" This is a visitatorial power of the most comprehensive character; and it has been settled ever since the great case of *Phillips vs. Bury,* (*Lord Raym.,* 5, 2 *Dun. & East,* 346,) that such power is, in its nature, summary and exclusive. In delivering the judgment in the case of *St. John's College vs. Toddington,* 1 *Burr.,* 159, 200, Lord MANSFIELD said that "the visitatorial power, if properly exercised, without expense or delay, is useful and convenient to colleges; and it is now settled and established that the jurisdiction of a visitor is summary and without appeal from it." And it may be added, that such power is not more useful and convenient to colleges than to other well organized educational establishments. If every dispute or contention among those entrusted with the administration of the system, or between the functionaries and the patrons or pupils of the schools, offered an occasion for a resort to the Courts for settlement, the working of the system would not only be greatly embarrassed and obstructed, but such contentions before the Courts would necessarily be attended with great costs and delay, and likely generate such intestine heats and divisions as would, in a great degree, counteract the beneficent purposes of the law. It is to obviate these consequences that the visitatorial power is conferred; and wherever that power exists, and is comprehensive enough to deal with the questions involved in an existing controversy, as is the case here, Courts of equity decline all interference, and leave the parties to abide the summary decision of those clothed with the visitatorial authority. Cases upon this subject are quite numerous, but it is only necessary to refer to a few of them in support of the principle here stated. *Att. Gen. vs. Middleton,* 2 *Ves. Sen.,* 328; *Berkhampstead Free School, ex parte,* 2 *Ves. & B.,* 134; *Att. Gen. vs. Smythies,*

2 *M. & Cr.*, 139; *Magdalen College Case*, 10 *Beav.*, 402; *Whiston vs. Dean and Chapter of Rochester*, 7 *Hare*, 532, 559.

Finding no ground whatever in the allegations of the bill to warrant the granting of an injunction, and that being the only relief sought, we shall affirm the order appealed from and dismiss the bill.

> *Order affirmed and*
> *bill dismissed, with*
> *costs to appellees.*

