Containing Cases of the January, April and October Terms, 1927.

## WILLIAM G. SCOTT et al. v. MARGARET MARDEN.

*Equity Jurisdiction—Enforcement of Contract—Testamentary in Form.*

Equitable jurisdiction, having once attached, will be retained so as to give full relief, even as to matters with regard to which equity could not originally have had jurisdiction.          p. 9

Papers testamentary in form and ambulatory in effect, by which decedent undertook to bequeath to plaintiff, in consideration of services rendered by her, certain sums of money and insurance policies, *held* to be enforcible as contracts in a court of equity, as against persons to whom decedent subsequently conveyed his property in fraud of plaintiff's claims thereunder.

pp. 9-13

*Decided March 24th, 1927.*

Appeal from the Circuit Court of Baltimore City (FRANK, J.).

Bill by Margaret Marden against William G. Scott, John C. Scott, and Samuel W. Scott, individually and as executors of William H. Scott, deceased. From an order overruling a demurrer to the bill, defendants appeal. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*John B. Deming,* with whom was *Robert R. Carman* on the brief, for the appellants.

*John Phelps,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

This case comes up on an appeal from an order of the Circuit Court of Baltimore City, overruling a demurrer to

the amended bill of the appellee, the demurrer having been sustained to the original bill. The allegations of the bill are substantially as follows:

First: That William H. Scott, at the time of his death, January 5th, 1926, owned an interest in a corporation known as the Great Scott Furniture Company, in Baltimore, worth approximately $150,000, and other real and personal property; and had on his life one insurance policy in the Travelers' Insurance Company of Hartford, Connecticut, of $5,000, and three policies of $5,000 each in the Equitable Life Assurance Society of New York, the net benefits or proceeds of which amounted to $16,669.19, which four policies have been made the subject of interpleader proceedings by the respective life insurance companies; and that he held one other life insurance policy, the details of which were not known to the appellee.

Second: That at the time of his death the said William H. Scott was about eighty-five years of age, and since the death of his wife in 1916 he had been living alone in a boarding house in Baltimore; ; that besides the infirmities of age he was subject to attacks of disease; that he was rarely visited by his sons or his family, and that he required considerable assistance and attention, nursing and care; that some time after his wife's death he employed the appellee to look after him from time to time, especially when he was ill, which she did to the best of her ability, but the demands upon her time became exigent, and that he frequently expressed himself to the appellee and to other persons as being not only grateful for her attentions, but that he was financially indebted to her for services and that he wished to reward her substantially for her services; the appellee was unmarried, having been divorced from her husband, and was largely dependent upon her own efforts for a living, and felt that she was entitled to whatever fair allowance Mr. Scott would make for her.

Third: That on or about November 18th, 1918, Mr. Scott sent to the appellee to come to his boarding house on

Linden Avenue, at which time he told her he wanted to give her two policies of insurance, some furniture, and some money that he had in bank, and that he started to write a paper as a memorandum thereof, but after writing the date he asked the appellee to finish it at his own dictation, and that he asked Mrs. Virginia Ginn, the boarding house proprietress, to witness the paper, which she did; that he signed the paper and handed it to the appellee, which said paper is as follows:

"Atlantic City, N. J.,
"November 25, 1918.
"I bequeath to Margaret Marden all money in bank in my name, also personal belongings, furniture in storage, etc., in my name, also policies Travelers $5,000, Equitable $5,000, policies in safe deposit.
"Wm. H. Scott,
"Virginia Ginn.
"Nov., 1918."

He told her that the policies of insurance were in his safe deposit box, and she could get them at any time, and handed her the key to the box, but she never attempted to use it; he subsequently delivered to her such of the furniture as he intended to be covered by the memorandum, and also attempted to put the money in bank in their joint names, but on the advice of officers of the bank decided to defer it and make some other arrangements in lieu thereof.

Fourth: That Mr. Scott, after signing the memorandum, continued his demands upon the appellee for nursing and attention; that he manifested a decided personal liking for the appellee, which grew into a fixed desire on his part to marry her; that she gave him no encouragement, always endeavoring in a friendly way to dissuade him of the idea; that the appellee had other ideas in her mind and had engaged herself to marry a worthy gentleman of substantial means; that Mr. Scott exhibited great agitation over this engagement, and finally persuaded the appellee to break off her engagement, and that she agreed not to marry during the

lifetime of Mr. Scott, her agreement to remain single being based on the faith of the transaction alleged in the fifth paragraph of the bill.

Fifth: On October 7th, 1920, Mr. Scott went to the home of Major James W. Denny, a member of the Baltimore bar and an ex-member of Congress, a man of high standing at the Baltimore bar, and there executed an instrument of writing, entitled a codicil, which is as follows:

"Codicil.

"In the name of God, amen.

"I, William H. Scott, of the City of Baltimore, being in health and of sound and disposing mind, memory and understanding, do make and publish this as and for a codicil to my last will and testament by me heretofore made, dated December 4th, 1918.

"I am desirous to make suitable provision for the comfort of my esteemed and faithful friend, Margaret Marden, at present residing at 2313 N. Charles Street in the City of Baltimore, and I hereby give, devise and bequeath to said Margaret Marden the sum of twenty thousand dollars ($20,000.00) to be paid to her out of my estate absolutely, provided she shall survive me and shall not have married during my lifetime. My life insurance and my interest in certain bonds shall first be applied to pay to her the said sum of twenty-thousand dollars, which I think can be done without interference with the business affairs mentioned in my will.

"I hereby confirm my said will, except as modified or changed by this codicil thereto, by this gift to Margaret Marden if she survive me and shall not have married during my lifetime."

Which was signed by Mr. Scott and witnessed by Major Denny and Mrs. Marie S. Bladin.

Sixth: That after executing the codicil of October 7th, 1920, which the bill alleges is in substance and effect a binding and irrevocable contract between herself and Mr. Scott, and an obligation upon him and his estate, Mr. Scott again

sought the advice of Major Denny, and upon the 15th of October, 1920, executed a bond, signed and under seal, in the handwriting of Major Denny and witnessed by him, which is as follows:

"Baltimore, Oct. 15, 1920.

"In consideration of five dollars and other good and valuable considerations paid me, I hereby agree and promise to pay to Mrs. Margaret Marden of Baltimore the sum of twenty-five dollars weekly from this date during my natural life. Provided she shall not marry again, and if she shall marry, this obligation to cease.

"Witness my hand and seal this 15th October, 1920.

"William H. Scott, (Seal.)

"Witness,

"James W. Denny."

That on or about October 16th, 1920, in response to a letter from Mr. Denny, she went to his office and that then and there Mr. Scott, together with Mr. Denny, proposed the two papers, to wit, the codicil and the bond as a contract to carry out the intentions which Mr. Scott had frequently expressed by word of mouth to the appellee, to wit: that if she would refrain from marrying during his lifetime, he would agree to give her $20,000 as her own, and that your oratrix agreed that she would not marry during Mr. Scott's lifetime, and the papers were handed to her to keep as a memorandum of the contract, and it was understood that the second paper provided for a weekly payment of twenty-five dollars as part of and supplementary to the paper of October 7th, Mr. Scott explaining to the appellee that he thought the arrangement in the contract of October 7th was not sufficient, and that the second paper was intended to provide an arrangement which was substantially equivalent to immediate possession of the capital.

Seventh: That shortly after the death of Mr. Scott the appellee was about to file the codicil for probate when she learned that he had executed a later will as of November

3rd, 1920, which undertook to make a different disposition of his estate, whereupon she obtained legal advice with a view to enforcing the codicil against the estate of Mr. Scott as a contract.

Eighth: That although an inventory has not been filed by the executors within three months after administration, the appellee avers that the said William H. Scott left a personal estate of upwards of $150,000 or $200,000, against which she charges that each of the three documents herein set forth constitute an existing claim and obligation against the estate of the deceased, and that the assets of the said estate are impressed with a trust *pro tanto* in her favor—

(1) By the paper of November 18th, 1918, which operates as an assignment of the $5,000 policy of the Travelers' Insurance Company, being policy No. 115518, and of the policy in the Equitable Life Assurance Society of New York, No. 1790653, amounting, with the accrued profits, to $5,-351.11; these being the policies which William H. Scott had in his safe deposit box on November 18th, 1918; the other two policies in the Equitable Life Assurance Society had been pledged for loans and were in the possession of the society as collateral security; that the furniture mentioned in the paper had been delivered to the appellee, and that "as to the money in bank, the intentions of the parties had been waived by mutual consent and substituted by the subsequent settlements upon your oratrix by William H. Scott"; (2) by the paper entitled "codicil," which specifies the proceeds of Mr. Scott's life insurance policies and certain bonds as primary funds for the payment of $20,000 and that this constitutes an equitable lien on the balance of the insurance fund after the payment of the two policies of $5,000 each above mentioned; (3) that under the sealed bond of October 15th, 1920, William H. Scott paid to the appellee twenty-five dollars per week to the first day of January, 1923, when he discontinued said payments, "by reason," as your oratrix alleges, "of the fact that the family of Mr. Scott were jealous of his fondness for her and were apprehensive lest he should marry her, and about the time Mr. Scott stopped paying the weekly provision

for her they forbade her coming to his boarding house to provide for his comforts, etc." and engaged a nurse for him. The amount claimed to be due and owing on the bond as of January 5th, 1926, is $3,900.

Ninth: The appellee claims that there is due to her on the two $5,000 policies $10,351.17, $20,000 under the codicil of October 7th, 1920, and $3,900 under the contract of October 15th, 1920, or a total of $34,251.17, with interest from January 5th, 1926.

Tenth: The bill then charges that subsequent to the death of the said William H. Scott she had been informed that on July 12th, 1921, he had made a declaration of trust of his stock in the Great Scott Furniture Corporation, amounting to 992 shares, in favor of his sons, William G. Scott, J. Carroll Scott, and Samuel W. Scott, and seeks to fasten a trust upon the same to the extent of the balance due her under her three obligations.

Eleventh: That aside from the property covered by the trust agreement the estate of William H. Scott is insufficient to satisfy the appellee's claims, "and the declaration of trust is on its face, and in its very essence, an attempt to hinder, delay and defraud" the appellee "and other creditors, and constituted *ipso facto* an act of bankruptcy."

The appellee then prays, substantially: (1) For an accounting with the executors of William H. Scott; (2) that the amount found to be due the appellee may be adjudged an equitable lien against his real and personal property; (3) that the declaration of trust of July 12th, 1921, may be declared null and void to the extent of her claim against the same; (4) that the trustees, who are also the beneficiaries under the trust agreement, may be required to disclose their dealings and accounts in the management of the trust and of the corporation; (5) that the executors may be required to bring into court all books, papers, etc., pertaining to the estate of William H. Scott; (6) that the appellants here, who are also the defendants below, may be required to answer certain interrogatories filed with the bill of complaint for dis-

covery of all assets of the estate of William H. Scott; and (7) for general relief.

To the bill as amended the appellants demur, the grounds of demurrer being, in effect: (1) That it is multifarious as to parties and subject-matter; (2) that it fails to disclose any grounds for relief; (3) that it fails to disclose any agreement enforceable in equity between the plaintiff and the decedent; (4) that the paper writings of November 25th, 1918, and October 7th, 1920, are testamentary and ambulatory in form and legal effect and that neither was ever binding or enforceable as an agreement, and that if they are entitled to recognition as contracts the plaintiff's remedy is at law and not in equity; (5) that the paper writing or bond of October 15th, 1920, is in restraint of marriage and therefore unenforceable, unlawful and void; and that, if it is a contract, the plaintiff has her remedy at law; (6) that the paper writings of November 25th, 1918, and October 7th, 1920, are testamentary and that both have been revoked by the subsequent will of Mr. Scott, and the only tribunal having jurisdiction is the Orphans' Court of Baltimore City; (7) that the Circuit Court of Baltimore is without jurisdiction in the premises unless it should first by its decree have taken and assumed jurisdiction over the further administration by the executors, and have ousted and superseded the primary jurisdiction of the Orphans' Court; (8) that the appellee has no claim against the trust estate of the said William H. Scott until her alleged claim shall have been established at law and until it is shown that his estate, exclusive of the stock held in trust, is insufficient to satisfy the appellee's claims; (9) that the Circuit Court is without jurisdiction to determine whether the stock of the Great Scott Furniture Company owned by William H. Scott is an asset of the estate of the deceased, and that the executors only can sue for an annullment of the trust; (10) that as between the appellants in their individual right and as trustees and as executors, the Orphans' Court has exclusive jurisdiction to determine the question; (11) that they further rely upon their demurrers in the interpleader causes of the Travelers' Insurance Company and the

Equitable Life Assurance Society against William H. Scott to the same extent and effect as though the said demurrers had been set forth herein; (12) and for such other causes as may be shown at the hearing.

The contentions of the appellants are all to the effect that the Circuit Court was without jurisdiction, and to arrive at such a conclusion they dissect the bill of the appellee; then as to each claim or issue allege that the Orphans' Court or the law court has jurisdiction. They overlook the fact that the appellee bases two of her claims on papers testamentary in form, which have been superseded by a later will admitted to probate, and that if her papers are enforceable as contracts the equity court is the only court having jurisdiction, and that there is the further charge that the decedent conveyed or assigned his property to his sons in fraud of the appellee's claim, by reason of which the estate in the hands of the executors, who are also appellants, is not sufficient to satisfy the appellee's claims.

One claim of the appellee, which, on its face, appears to be independent of the others, to which the contention of the appellants applies, is that of the claim of $3,900 under the agreement of October 15th, 1920. It is well settled, however, that equitable jurisdiction having once attached, will be retained so as to give full relief, even as to matters with regard to which equity could not originally have had jurisdiction. *Linthicum v. Wash., B. & A. Elec. R. Co.,* 124 Md. 273; *Young v. Diedel,* 141 Md. 672; *Boland v. Ash,* 145 Md. 474-9.

The bill of complaint in this case seeks to enforce against the estate of Wm. H. Scott, as contracts, two paper writings, one of November 25th, 1918, and the other of October 7th, 1920, in favor of the appellee, both papers being on their face testamentary in form and ambulatory in effect, the bill alleging as consideration therefor the care of and attention to Mr. Scott by the appellee, the paper of October 7th, 1920, being upon the condition that the appellee should not marry during his lifetime. The objection by the appellants, that the condition in restraint of marriage made the codicil of October

7th, 1920, void, has been abandoned. *Bostick v. Blades,* 59 Md. 231.

The bill alleges that the three papers herein set forth were all executed by Mr. Scott in consideration of valuable services rendered him by the appellee, the last two upon the condition that if she should marry during his lifetime they should be void. She did not marry, so that nothing appears in this record to have changed the situation which existed when they were executed. It is contended by the appellee that the papers of November 25th, 1918, and October 7th, 1920, are exclusive of each other. It would be premature for us to pass on that question now. What concerns us are the allegations of the bill, and, even if the papers of November 25th, 1918, and October 7th, 1920, are testamentary and ambulatory in form and effect, whether they can be enforced against the appellants as contracts. It is conceded that the paper of November 25th, 1918, could not be admitted to probate as a will, because it lacks the requisite number of witnesses. It is alleged, however, that it was intended to and did have immediate effect, and that Mr. Scott undertook forthwith to carry out its terms. He later, on October 7th, 1920, executed the codicil, which was testamentary in form and effect, duly executed and attested, and, but for the probate of a later will, could have been probated. It is alleged that both papers were executed in pursuance of verbal understandings previously had, and that there had been compliance by the appellee on her part with the agreements, and that, therefore, they were founded upon good and valuable considerations.

None of the questions raised by the demurrer are new in this court. Two cases cover, in one or the other, all the allegations contained in the bill and objected to by the demurrer, viz., *White v. Winchester,* 124 Md. 518, and *Boland v. Ash,* 145 Md. 465. In the latter case Judge Offutt has exhaustively reviewed the decisions in this state touching the subject of jurisdiction, and the conflict of jurisdiction of the orphans' court and the chancery courts. At page 474, he says: "In order to justify the intervention of a court of chancery in the administration of an estate in the orphans' court, there-

fore, it is necessary that the facts relied upon to support it should be sufficient to bring the case under some recognized head of equity jurisdiction; as, for instance, where fraud is alleged, or a discovery sought, and they must also show that adequate relief cannot be had in that court." and at p. 477: "That the facts stated, if true, are sufficient to justify the court in decreeing the discovery prayed, in annulling the assignment to Boland in so far as it affects the complainant and in determining the validity and effect of the assignment to the complainant, we think is clear. * * * If the complainant is informed of the nature and extent of the assets of the estate said to be concealed by the administrator, he may have a complete remedy in the orphans' court, * * * but to secure that relief the complainant might be required to resort to several proceedings, attended by delay and expense, uncertain in extent, all of which could be obviated and rendered unnecessary if the equity court required the administrator to administer the assets of the estate under its supervision. Under such circumstances it is not the practice in this state for courts of equity to relinquish their control over the subject-matter of such a proceeding as this until full, adequate, and complete relief is afforded to all parties before it, according to their respective rights and interest therein." And further says: "The lower court was justified * * * in requiring the administrator to discover and account for all assets properly belonging to that estate, whether in his hands or the hands of another, and in whatever capacity held."

The primary object of the appellee in invoking the aid of a court of equity is to enforce as contracts the testamentary papers which she asserts are a lien upon the property of the testator, executed in consideration of valuable services rendered by the appellee to the testator. It must be conceded that as wills they would be nugatory, both having been superseded by a subsequent will, and, in part at least, avoided by the execution of the trust agreement with the sons, who are executors and beneficiaries under the later will. That equity has jurisdiction in this state to entertain such a bill is very well settled.

This Court, in an opinion by Judge Boyd, in *White v. Winchester,* 124 Md. 522, quoting with approval 36 *Cyc.* 735, said, "An agreement to make a certain disposition of property by a will is one which, strictly speaking, is not capable of a specific execution; yet it is within the jurisdiction of a court of equity to do what is equivalent to a specific performance of such an agreement.  Such a contract is enforced after the death of the promisor by fastening a trust on the property in the hands of heirs, devisees and personal representatives and others holding the property with notice or as volunteers."

In *Wilks v. Burns,* 60 Md. 70, this Court said:

"There can be no doubt of the legal right of one having the exclusive ownership of property to enter into a contract to execute a will in favor of the other contracting party; but such transaction can not properly be termed a testamentary disposition of property; two or more contracting parties having concurred and bound themselves by reciprocal obligations, founded on good and valuable considerations.  The testamentary document is nothing more than a part of the contract, which has been determined by mutual stipulations, controlling the mind of the testator."

"If a will executed under these circumstances is subsequently cancelled, the aid of a court of equity can be invoked. * * * By an inquiry into the terms of the contract, which must be established by the adduction of proper and adequate evidence."

See also *Whitridge v. Parkhurst,* 20 Md. 62; *Frisby v. Parkhurst,* 29 Md. 58; *Mundorff v. Kilbourn,* 4 Md. 459.

"A paper in the form of a will, executed in consideration of personal services rendered or to be rendered, or other valuable consideration, and delivered to the devisee or legatee therein named, may constitute an irrevocable contract." "Such testamentary paper, when founded on valuable consideration, is in the nature of a covenant to stand seized to the use of the promisee; and it will be enforced in equity under a bill in the nature of specific performance, by fastening a trust upon the property in the hands of the executor,

legatees and devisees, under a subsequent inconsistent will." From the syllabus of *Bolman v. Overall,* 80 Ala. 450.

In *Bruce v. Moon,* 57 S. C. 60, the testator, in pursuance of an oral understanding, had agreed to give the plaintiff a farm in consideration of services and executed and delivered to her a will to that effect. Later, he conveyed the farm to his son. The court held the deed to be void and decreed the property to the plaintiff. In the instant case, the decedent, shortly after the execution of the codicil, to the appellee, conveyed or assigned the bulk of his estate to the appellants, and on the property so assigned the appellee seeks to impress a trust to such extent as may be necessary to satisfy her claims.

Because we are of the opinion that the allegations of the bill, if true, entitle the appellee to relief, the order of the Circuit Court of Baltimore will be sustained.

This conclusion, in our opinion, is not inconsistent with the opinion of Judge Digges in *Soho v. Wimbrough,* 145 Md. 498, who said, quoting from *Semmes v. Worthington,* 38 Md. 318 : "that the contract should be clear and definite, and the acts done should be equally clear and definite and solely with a view to the performance of the particular agreement" ; and in conclusion said : "it is sufficient to say that the proof of the agreement itself and of the acts relied on to establish part performance are so conflicting and contradictory, when sought to be applied to the well settled principles governing cases of this character, that a court of equity should not grant the relief prayed."

In the case before us the two testamentary papers do not appear to be uncertain in their terms, as in the case of the agreement set up in *Soho v. Wimbrough,* though we are not to be understood as saying whether the codicil of October 7th, 1920, is either inclusive or exclusive of the paper writing of November 25th, 1918, that question not being before us.

> *Order overruling the demurrer affirmed, with costs to the appellee; and case remanded for further proceedings.*