## WILLIAM W. MURPHY ET AL. *v.* STATE ROADS COMMISSION.

[No. 26, January Term, 1930.]

8

*Decided March 14th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*William J. Rickards,* with whom was *T. Alan Golds-borough* on the brief, for the appellants.

*Thomas H. Robinson, Attorney General, Robert H. Archer, Assistant Attorney General,* and *J. Owen Knotts,* submitting on brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

The object of this proceeding is to restrain G. Clinton Uhl, Howard Bruce, and John K. Shaw, constituting the State Roads Commission of Maryland, herein referred to as the Commission, from establishing a state road between the "Sour Apple Tree", a point on the road from Denton to Preston, and Andersonville, in Caroline County, Maryland. It was initiated by the appellants, who filed in the Circuit Court for Caroline County a bill for an injunction restraining the defendants, who are the appellees in this case, from proceeding with the building of that road "until inquisition, ratification and payment."

The allegations of the bill are much broader than its prayer for specific relief, but as the trial court heard and decided the case on the prayer for general relief, and as it is important that the issues raised by the pleadings be considered and determined, we will deal with the case as presented by the pleadings without regard to the limits of the prayer for specific relief. *Fletcher, Equity Pl. & Pr.,* sec. 77; *Miller Equity Pr.,* sec. 100.

The bill alleges in substance that the State Roads Commission "laid down a section of state highway" in Caroline County, and advertised for bids for the construction thereof, and that the road thus "laid down" transects certain lands owned by the complainants to their great disadvantage and injury. That "the selection of the proposed route is a gross abuse of the discretion vested in the State Roads Commission, founded upon no reasonable consideration and overlooking entirely the convenience and necessities of the public as well as the rights of these complainants, so injuriously affected. * * * There exists no public necessity for the appropriation of private property by pursuing the course as laid down, there being an established road which is a direct course and would come out at the same point as the one laid down, which would not damage a single piece of property along same and on which the said Commission would not have to purchase a single right of way and the exercise of such power under the circumstances is arbitrary and fraud upon the great fundamental guarantee of private rights." That the commission had trespassed upon the lands of the complainants and that it continued to do so "without even showing a reasonable degree of the necessity for the exercise of its power and against the constitution of the state." It further states that the complainants as taxpayers object to the building of the road as laid down "because of the needless expenditure of money, as it will leave the old established road aforesaid, to still be kept up by the taxpayers." And finally it alleges that the commission "is proceeding to take the private property" of the complainants without due process of law, and in violation of those provisions of "the Constitution" relating to the taking of private property for public use, that it is proceeding to take possession of their property without their consent "or sanction of law," and that unless the commission is restrained the complainants are in the position of having their property taken "by trespass without a remedy."

To that bill the defendants filed a combined answer and demurrer, under the authority of General Equity Rule No.

20, and *Hendler Ice Cream Co. v. Lillich,* 152 Md. 192. The trial court disregarded the demurrer, but treated the case as at issue on the allegations of the bill and answer, and since the appellants acquiesced in that procedure, the demurrer need not be further considered. In its answer the commission denied that in locating the proposed road it had abused the discretion vested in it, that there was no public necessity for the improvement, or that it had trespassed upon the complainants' property. It stated that if it could not agree with complainants upon compensation for so much of their land as was needed for the construction of the road, it would secure such property by appropriate condemnation proceedings, and further answering it alleged that in locating the road it had considered the interests of persons who might use it from the standpoint of safety, economy, and convenience. It also alleged that "the construction of the proposed section of state road is the first link in the construction of a state road from the nearest point on the present Denton-Preston state road to connect with two Delaware Highways already built to the Maryland state line, one connecting with the Maryland line at Hickman, and the other at a point two and one-half miles south of Hickman, both of which can be reached by the construction of roads from the terminus of the proposed road near Andersontown. That said road as now proposed to be built is intended by said commission to be a connecting link in, and an eastern extension of the state highway which is now in the course of construction, known as the Eastern Shore Boulevard, leading from Kent Island to the Delaware line, connecting bilaterally the Maryland highways with the state highways of Delaware."

The case was heard upon the issues raised by those pleadings, evidence was offered on both sides, and at the conclusion of the hearing the court dismissed the bill with costs to the defendants. The appeal is taken from that decree.

The record presents three questions, one of law, whether an act of the State Roads Commission, done in the honest exercise of the discretion reposed in it by the statute, is reviewable in a court of equity, and two of fact, first, whether

the appellees abused that discretion, and second, whether any acts or conduct of the appellees were sufficient to justify a reasonable belief on the part of the appellants that the appellees proposed to take their lands without first paying or tendering compensation therefor as agreed upon between the parties or fixed by a jury, as required by article 23 of the Bill of Rights, and article 3, section 40 of the Constitution of Maryland, and those questions will be considered in their order.

The State Roads Commission of Maryland is an administrative agency of the State. It was created by chapter 141 of the Acts of 1908, and by that act, and subsequent acts of the General Assembly of Maryland, amendatory thereof, Acts 1918, ch. 224, and Acts 1922, ch. 29, was granted plenary power within the limits of the funds provided therefor, to "select, construct, improve and maintain" a general system of improved highways and roads within the state. Code, art. 91, sec. 28. In aid of the powers thus conferred, it was given authority to acquire by purchase or condemnation all property needed to effect the purpose of its creation, *Ibid,* and to enter into such contracts as might be germane or appropriate to the performance of its duties, or the exercise of the powers conferred by the statute. The purpose of that legislation was to create a system of main state highways and to entrust to the commission the power and the duty, not only of constructing such highways, but of ascertaining as a matter of fact where the roads and highways forming that system should be located to best serve the public interest, and of selecting such roads and routes in accordance with such findings.

The Act of 1908 was in furtherance of a policy of road improvement initiated by the State as early as 1898. By chapter 51 of the Acts of 1896, the State Geological and Economic Survey was created and entrusted with the preparation and publication of reports and maps illustrating the natural resources of the state. By chapter 454 of the Acts of 1898, the machinery thus created was utilized for the investigation of the question of road construction in the

state. By chapter 225 of the Acts of 1904, known as the Shoemaker Road Act, another step was taken and the powers and duties of the State Geologic and Economic Survey, also in the act called the commission, were expanded, and a plan was adopted for the construction, under the general supervision of the commission, of state aided roads in the several counties of the state, to be paid for by the state, the county, and interested landowners. The operation of that system naturally resulted in the expenditure of state funds in aid of the construction of short disconnected sections of highway throughout the state, having no necessary connection or relation with each other, and it was found to be wholly inadequate for the establishment of any general system off state highways. At or about that time the automobile was beginning to be a factor in transportation, and the need for better roads became more urgent. In response to that demand, chapter 141 of the Acts of 1908 was passed, not as a substitute for the earlier legislation, but for the purpose of creating an inter-related and connected system of state highways, selected, established, constructed, and maintained by the State alone, and paid for out of state funds. With the establishment of such a system it was apparent that the state aid statutes could be utilized for the constructing of local improved highways connecting the main highways to be established under the plan provided by chapter 141 of the Acts of 1908, and the policy expressed in those statutes was continued, and with some modifications still prevails. By chapter 217 of the Acts of 1910 all the powers and duties vested in the State Geologic and Economic Survey in reference to highways was vested in the State Roads Commission.

By chapter 375 of the Acts of 1912, and chapter 536 of the Acts of 1916, the counties were relieved of the obligation of maintaining state aided local roads, but in lieu of that obligation were required to levy for the use of the state a tax of one cent on each one hundred dollars of the value of certain property. Chapter 116 of the Acts of 1929 and chapter 118 of the Acts of 1927 relieved the several counties of the obligation of contributing to the cost of constructing and

establishing lateral local roads, so that at present all highways established and constructed under the supervision of the state, whether main or lateral, are integrated in a single system of state roads.

. From the beginning, and throughout the entire evolution of the present system of state highways construction, maintenance, and control, the constant and unbroken policy of the state has been to establish and maintain an adequate system of state highways adapted to modern methods of transportation, so as to afford to every section of the state safe, adequate, economical, and convenient facilities of communication with every other section thereof. To carry out that policy it adopted the device of creating a single administrative agency, the State Roads Commission, imposing upon it the duty of effecting that general purpose, and clothing it with sufficient power to enable it to fully discharge that duty.

That it had the power to do that has long since been a closed question. *Gregg v. Public Service Commn.,* 121 Md. 1; 12 *C. J.* 847, note 2; 6 *R. C. L.* secs. 175, 179, 180; *Elliott on Roads and Streets,* secs. 213, 214. As a necessary incident of the authority to determine the location of roads to be incorporated in the general system, the commission is given the power of considering different roads and routes, and of selecting those which will in their judgment best serve the public interest, and ordinarily the only limitation upon the discretion, thus given, is that it shall be fairly and honestly exercised, and that private property may not be taken for an improvement for which there is no public necessity. Within those limits, whether wise or unwise, the decision of the commission is conclusive and not subject. to judicial review. *Clendaniel v. Conrad,* 3 Boyce (Del.) 549; *Huffman v. State Roads Commission,* 152 Md. 580; *Wiley v. School Commissioners,* 51 Md. 402; *High on Injunctions,* sec. 1240; *McQuillen on Munic. Corp.,* sec. 390; *Grayson Co. v. Harrell* (Tex.), 202 S. W. 163.

So that in this case the inquiry is limited to ascertaining (1) whether there is any public necessity for the proposed

road, and (2) whether in selecting it the commission acted in good faith.

Ordinarily the question of whether a proposed highway is required by public necessity is legislative rather than judicial (*Elliott on Roads and Streets,* sec. 213; *Nichols on Eminent Domain,* secs. 333, 334); and while the question as to whether the proposed use is public in its nature may ultimately become a judicial one (*Ibid.,* sec. 52; *Van Wilsen v. Gutman,* 79 Md. 405), when the Legislature has determined that a proposed improvement is public in its nature, the *prima facie* presumption is that the use thus declared to be public is public. *Nichols, Eminent Domain,* sec. 52. So too when the Legislature has determined that a proposed use is public in character, it may delegate, to a board, commission, or other agency, power to ascertain and determine what property is needed for that use, and the decision of such an agency as to the public necessity for taking particular property is not subject to judicial review unless its decision is so oppressive, arbitrary or unreasonable as to suggest bad faith. *Nichols, Eminent Domain,* secs. 333, 334. Or, as stated in the work last cited: "The Legislature may, and usually does, delegate the power of selecting the land to be condemned to the public agent that is to do the work. In such case it makes little if any difference whether the grant of authority is in terms limited to such land as is 'necessary' for the purpose in view, for a general grant of authority carries the same limitation by implication and in either case the necessity is primarily for the party taking, and not for the courts to decide, and the decision of such party is final as long as it acts reasonably and in good faith. If the land is of some use to it in carrying out its public object, the degree of necessity is its own affair. Whether there is any necessity whatever to justify the taking is, however, a judicial question."

Turning to the facts of the present case, it appears that the Maryland Legislature in 1929 appropriated $536,000 for the construction of a state road to be known as the Eastern Shore Boulevard, running from the town of Queen Anne to

intersect an improved road leading from Queenstown to Stevensville at Queenstown, and thence to an appropriate point on a canal to be constructed through or across Kent Island. That boulevard is to connect at Queen Anne with a state road which intersects another state road running from Elkton to Salisbury via Denton and Preston. The County Commissioners of Caroline County desired to connect that system of roads with the Delaware State Highway System, and requested the State Roads Commission to make surveys and to construct from the lateral and post road funds allocated to Caroline County a spur from the Denton-Preston road, beginning approximately at Watt's Creek Bridge and running in an easterly direction about two miles to Andersontown, with the purpose of eventually extending the proposed roads as funds became available to connect with the Bridgeville state road at the Delaware line. The commission adopted the recommendation and directed surveys of possible locations of the proposed road to be made. There were available five routes, any one of which would connect the Preston-Denton road with Andersontown, and substantially all of the testimony contained in the record relates to the relative merits of these several routes. One began at Seventh Street in Denton, another at Boon Dukes corner about two miles north of Watts Creek, a third began at Watts Creek Bridge, a fourth at Sour Apple Tree, a short about one-half mile south of the Sour Apple Tree.

There can be no possible doubt that the proposed improvement is of a public nature, and there is not the slightest evidence that, in selecting the route adopted and in holding that it was needed for the completion of the projected road, the commission in any way abused the discretion vested in it by the statute.

The policy of the state, as expressed in the statutes to which reference has been made, is to place the entire state roads system, embracing lateral as well as main roads, under the control and supervision of the State Roads Commission. And while the Code, art. 56, sec. 212B, and chapter 454 of

the Acts of 1927, sec. 11, commit the duty and the power of selecting the particular lateral roads to be improved from the lateral and post road funds to the commission and the county commissioners of the respective counties, the selection must be made by the concurrent act of both. And it is to be presumed that, in exercising the discretion reposed in it, the commission will be guided and influenced by considerations affecting the utility of the entire system, as well as by the effect of the proposed improvement or conditions local to the territory in which it is to be established. The evidence in this case conclusively demonstrates that, in selecting the particular route of which the appellants in this case complain, the commission did give careful consideration to the public necessity for the improvement from the standpoint of both the local and the general public. That being so, whatever doubt there may be as to the wisdom or propriety of its choice, there can be none as to its final and conclusive effect. And any other conclusion would result in substituting, for the discretion reposed in the commission, judicial judgments, and would dislocate and disrupt the entire machinery and policy of the state in respect to the establishment and maintenance of a state road system, by placing the administration of one of the most important functions of the officials entrusted with effecting the policy of the state in the hands of the courts of the twenty-three counties of the state rather than in he hands of a single administrative agency.

The futility and absurdity of such a construction could not be better illustrated than in this case. Of the appellants, one, William W. Murphy, at one time or another, advocated each of three of the five available routes, another, Wingate Neal, at one time favored the Watts Creek Bridge route and at another the Williston-Andersontown road. And while most of the witnesses for the appellants preferred the Boon Dukes road, each of the five available routes was advocated by one or more witnesses, who gave cogent and convincing reasons for their respective opinions. Both the commission and the County Commissioners of Caroline County concurred in

the selection of the Sour Apple Tree road, of which the appellants complain. The county commissioners at first recommended the Watts Creek Bridge route, but the commission rejected that location, and there was no serious question as to the propriety and wisdom of its action as to that location. The real controversy was as to whether the Boon Dukes road, or the location preferred by the commission, should be selected. It was not disputed that the distance from Denton to Andersontown by the Boon Dukes road would be about the same as by the Sour Apple Tree road, that it would cost about twice as much to construct, and that persons bound for Andersontown over the Denton-Preston road from the south would have to travel about two miles further to reach it by way of the Boon Dukes road than by the Sour Apple Tree road. The engineers for the commission testified that the Sour Apple Tree route was safer, more economical, and more convenient. While they were contradicted by appellants' witnesses, it is not our purpose to weigh or resolve that conflict, since our reference to the evidence has not been to decide whether the commission execised the discretion reposed in it wisely, but whether it exercised it honestly. And as in our opinion the evidence clearly shows that the commission did not select the proposed route until it had examined and carefully considered such relevant facts as should have affected its conclusion, we find no abuse of the discretion vested in it, and it will not be reviewed.

The third question presented by the appeal is whether appellants are entitled to the specific relief prayed in their bill, which is that the appellee be restrained "from proceeding further in the building of said road as laid down until inquisition and ratification and payment." It will be noted that they do not ask that the commission be restrained from entering upon, or taking their property, but that it be enjoined from proceeding further with the construction of the road. A sufficient answer to that prayer would be that the appellants have no right to interfere with the construction of a lawful public improvement unless it affects some per-

sonal or property right belonging to them or to some of them. If the appellee undertakes to build the proposed road up to the appellants' lands, so long as it does not encroach thereon, it is within its rights, but it does so at its risk, and it can gain no rights against them by way of estoppel on the ground that they failed to object to the improvement. For the commission as well as the appellants are charged with knowledge that, under the Constitution of the State, the appellants' property cannot be appropriated for a public use until compensation therefor as agreed upon between the parties or fixed by a jury shall have first been paid or tendered. Const. of Md., art. 3, sec. 40.

But even if the prayer is construed as an application for an injunction to restrain the commission from taking appellants' lands without first having paid or tendered compensation therefor, they are not entitled to that relief either upon the case made out by the evidence. There is evidence that agents of the commission entered upon the appellants' lands for the purpose of a preliminary survey under the supposed authority of article 33A, section 19, and that they did some damage. Assuming that that statute is within the principle announced in *Steuart v. Baltimore,* 7 Md. 516, and *Nichols on Eminent Domain,* Sec. 112, it nevertheless explicitly prohibits persons entering private property in the exercise of the power conferred by it from damaging such property, and it could not exempt such persons from responsibility for such acts as those of which appellants complain.

But assuming, without deciding, that appellees' agents in the course of their work did trespass upon appellants' lands, it appears that the survey had been completed before the bill in this case was filed, and there is no evidence that the commission threatened or intended to make any other or further entry upon appellants' property until it had in some appropriate manner secured the legal right to do so. In its answer the commission alleged that, if it is not able to agree with the appellants upon the terms upon which their property may be appropriated for the construction of the proposed road, it will institute proceedings to condemn so much of it as may

be needed for that purpose. And while its answer is neither as clear nor as explicit as it might have been in disclaiming any intention of entering appellants' land until it had paid or tendered compensation for the use it proposed to make of it, as agreed upon by the parties or fixed by a jury, nevertheless, in the absence of satisfactory evidence of such an intention, it will not be assumed that public officials occupying such important and responsible positions will intentionally violate rights secured to the appellants by the Constitution and statutes of the state.

It follows from what has been said that we fully concur in the conclusion announced by the trial court, and the decree appealed from will be affirmed.

*Decree affirmed, with costs.*