## VULCAN WATERPROOFERS, INC. *v.* MARY-LAND HOME IMPROVEMENT COMMISSION

[No. 326, September Term, 1968.]

*Decided April 9, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, SINGLEY and SMITH, JJ.

*Arnold Fleischmann* and *Allan H. Fisher, Jr.,* with whom were *Fisher & Fleischmann* on the brief, for appellant.

*Henry R. Lord, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General* and *George W. Liebmann, Assistant Attorney General* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court. BARNES, J., concurs and filed a concurring opinion at Page 215, *infra.*

Appellant (Vulcan) is a home improvement contractor within the meaning of Code (1968 Repl. Vol.) Art. 56, §§ 245 to 269, inclusive. Vulcan here appeals the action of the Circuit Court of Baltimore City in granting Maryland Home Improvement Commission (established under the aforegoing sections of the Code) the right to inspect Vulcan's records. We shall remand for further proceedings.

The Maryland Home Improvement Commission (Commission) was established by Chapter 133 of the Acts of 1962. Section 257 (g) of Art. 56 as amended by Chapter 827 of the Acts of 1963 provides:

> *"Requiring supplementary or additional informa-tion.*—The Commission may, at any time, require reasonable information of an applicant or licensee, and may require the production of books of accounts, financial statements, or other records which relate to the home-improvement activity, or qualification, or compliance with this subtitle, whether such information or records are supplementary or additional to the contents of license applications or otherwise."

On October 24, 1966, the Commission addressed the following letter to Vulcan:

> "Pursuant to the authority granted the Maryland Home Improvement Commission by section 257 (g) of Article 56 of the Annotated Code of Maryland (Home Improvement Law) the Maryland Home Improvement Commission directs that you provide an investigator from this Commission with the names and addresses of homeowners for whom you have had to provide service due to the fact that your Vulcan Waterproofers' method did not work, after the first application.

> "The Commission is desirous of having the names and addresses of these homeowners for whom service had to be performed during the period from July 1, 1966 to the present."

> "This information should be provided the investigator upon presentation of this letter to you."

Counsel for Vulcan replied in pertinent part as follows:

> "Due to the fact that this could cause substantial inconvenience to my client and possibly jeopardize its standing in the community as a reputable water-proofing concern I have advised my client that this information not be made available to you without the opportunity of a full hearing by your Board."

> "I do not think that this is unreasonable on our part and request that if you have any questions concerning the same that you contact me."

The reply of counsel brought about a registered letter from the Commission under date of November 4 directing that Vulcan supply to the Commission the records of *all* waterproofing work performed by Vulcan for home owners within the State of Maryland in the period July 1, 1966, to November 4, 1966, including the names and addresses of the home owners. Vulcan was advised that if it did not comply with the directive by noon on November 9 the Commission would "have no alternative but to institute action

against [its] license for violation of Section 261 (a) (14) of Art. 56 of the Annotated Code of Maryland." Section 261 (a) (14) lists as a prohibited act "willful failure to comply with any order, demand or requirement lawfully made by the Commission under and within the authority of this subtitle." Section 261 (b) by referring to Section 259 provides for suspension or revocation of license for violation of any of the prohibitions of Section 261.

Section 260 (d) of Art. 56 provides in pertinent part:

"(d) *Failure to comply with order * * * of Commission.*—If any person fails to comply with a lawful order * * * of the Commission * * *, upon petition of the Commission setting forth the facts, it shall be the duty * * * of the Baltimore City court * * * to compel obedience to the requirements of such * * * order and to compel the production of relevant documents and other evidence. Any person failing, refusing or neglecting to comply with such order of the court shall be punished as for contempt of court."

Without waiting for action by the Commission under Section 260 (d), Vulcan filed its bill of complaint on November 9, 1966, in the Circuit Court of Baltimore City. After various preliminary recitations it stated:

"8. That the request for information by the Commission is malicious, arbitrary and unreasonable in that Vulcan will be irrevocably harmed as a result of the questioning and harassment of its satisfied customers by the Commission and/or its inspectors, that no grounds or basis for its request have been stated, that said request is made solely for the purpose of harassment, that said request is made solely to injure the standing and reputation of Vulcan, and that there is no reasonable cause for the Commission to have such information and that immediate, substantial and irrevocable injury will result to Vulcan if this order is sustained.

"9. That the Commission has no legal authority to demand such information.

"10. That Vulcan is without an adequate remedy at law."

Vulcan prayed that the court temporarily and permanently enjoin the Commission, "from acting upon, and forcing (sic) or carrying out the order contained in its letter dated November 4, 1966" and that it, "Determine that said order is arbitrary, malicious, unreasonable and without any legality."

A demurrer filed by the Commission was overruled. An answer was then filed and the matter came on for hearing on June 15, 1967. Melvin Waxman, president of Vulcan, testified as did John C. Coolahan, the former executive director of the Commission, who was called as a witness by Vulcan. The hearing was recessed for lunch and never resumed, apparently because the parties decided to attempt to work out a settlement. On December 8, 1967, the Assistant Attorney General advised counsel for Vulcan that the matter could not be further delayed and that unless he received a copy of a proposed order by December 11 and unless they could conclude an agreement by the afternoon of December 12, he would be obliged to ask the court to re-schedule the matter for trial. On December 15 he wrote to the chancellor requesting that the case be re-scheduled and the trial continued. There was no further hearing.

On August 19, 1968, the chancellor passed an order holding the order previously issued by the Commission to be a lawful order and directing the procedures under which the desired inspections might take place. On August 28 Vulcan submitted a motion to rescind or suspend the order followed by a motion on September 18 to vacate the order of August 19. The chancellor on September 18 modified the August 19 order by providing:

"All files examined by the Commission representatives, all notes taken by Commission representatives, and all items removed from said files by [Vulcan] or as to which a claim of trade secret has been or is asserted shall be submitted by [Vulcan] to this court under seal by September 27, 1968."

Pursuant to motion for a statement for the grounds of his order made under Maryland Rule 18 c, the chancellor said:

"Vulcan filed a Bill of Complaint for temporary and permanent injunction on November 9, 1966. A demurrer having been filed on November 16, 1966, and overruled on March 13, 1967, the defendants filed an Answer to the Bill of Complaint on March 31, 1967. The matter came for a hearing and testimony was taken in open court on June 15, 1967. Subsequently, several conferences with the Court were conducted in Judge Cardin's chambers. Counsel, being unable to agree as to how the inquiry should proceed, the yield from numerous attempts at an agreeable procedure proved nugatory.

"This Court, having considered the matter fully, passed an Order on August 19, 1968, and a modification of same was passed on September 18, 1968. It is from this Order and modification thereof that this Appeal has been noted. * * *

"The Court is of the opinion that the authority for its decision is to be found in Article 56, Section 257 (g), Annotated Code of Maryland, 1957 Edition * * *.

"It is the conclusion of this Court that the discovery Order of the Commission is a lawful Order authorized by Article 56, Section 257 (g) ; and that the information requested and the records to be produced in accordance with the Order of August 19, 1968, are reasonable and within the scope of the statute. The privilege to be licensed and to operate in the home-improvement business brings with it the responsibility of conducting activities under the requirements of the law; and to demand same works no unusual hardship to the complainant in this case."

The questions here presented to us are: (1) whether the Commission's order was a proper one, (2) whether it is necessary for there to be probable cause before the Commission proceeds with an investigation, (3) whether the Circuit Court of Baltimore City might pass an order granting the Commission the right to inspect Vulcan's records when the Commission had

not requested such an order and Code (1968 Repl. Vol.) Art. 56, § 260 (d) vests the Baltimore City Court with the jurisdiction to enforce orders of the Commission and the duty of compelling obedience to the requirements of such orders, and (4) whether the action of the chancellor was improper in that the hearing was not concluded.

## I and II

In *United States v. Morton Salt Company,* 338 U. S. 632, 70 S. Ct. 357, 94 L. Ed. 401, (1950) the Supreme Court of the United States speaking through Mr. Justice Jackson said:

> "This case illustrates the difference between the judicial function and the function the [Federal Trade] Commission is attempting to perform. * * *
> * * *
> "The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. *It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated,* or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law." *Id.* at 641-43. (emphasis added)

We agree with this description of the scope of administrative power. The information here requested was clearly within the grant of powers to the administrative agency. It was not obliged to show probable cause for its inquiry.

## III

In this case Vulcan invoked the powers of the equity court and now complains to us because the chancellor granted relief to the defendant. As far back as 1855 our predecessors in the case of *Keighler v. Ward,* 8 Md. 254 (1855) said:

> "[J]urisdiction once rightfully asserted by a court of equity, and which would lead to a settlement of all the questions which might arise out of the subject matter in controversy, will exclude all jurisdiction over it, by other courts, for similar purposes, and the reason of this, which is to prevent a number of conflicting proceedings about the same thing, is wise and just." *Id.* at 266.

In *Scott v. Marden,* 153 Md. 1, 137 A. 518 (1927) Judge (later Chief Judge) Sloan said for this Court:

> "It is well settled, however, that equitable jurisdiction having once attached, will be retained so as to give full relief, even as to matters with regard to which equity could not originally have had jurisdiction." (citing authorities) *Id.* at 9.

The aforegoing doctrine has been repeated many times since then. See *Jacham Enterprises v. Hoffman,* 233 Md. 432, 438, 197 A. 2d 128 (1964). Equity will give complete relief. *Silver v. Benson,* 227 Md. 553, 559, 177 A. 2d 898 (1962). This doctrine extends to the granting of relief to defendants. See 30 C.J.S. *Equity,* § 76 wherein it is stated:

> "The doctrine of retaining jurisdiction completely to adjust the controversy extends to the granting of relief to a defendant or between codefendants. On this ground defendant may have relief to which he shows himself entitled against plaintiff, although he does not ask for it, and even in some cases where plaintiff has failed to make out his own case. Under some circumstances defendant may thus obtain relief in the absence of facts essential to the maintenance of an original bill for the purpose.

"Where the original bill presents questions of equitable cognizance, defendant may have legal relief against plaintiff."

See also 27 Am. Jur. 2d *Equity*, § 108 to the same effect.

The original subject matter was cognizable by equity. Accordingly, on proper facts, the chancellor would be entitled to grant the defendant the discovery sought.

## IV

Vulcan in its bill of complaint, as previously noted, claimed the action of the Commission to be "malicious, arbitrary and unreasonable * * * made solely for the purpose of harassment, * * * solely to injure the standing and reputation of Vulcan, and that there [was] no reasonable cause for the Commission to have such information * * *."

2 Am. Jur. 2d *Administrative Law*, § 653 states:

"The motive which prompted agency action is not a subject of judicial inquiry *except where malice, fraud, or corruption is involved."* (emphasis added)

Similar language is found in 73 C.J.S. *Public Administrative Bodies and Procedure*, § 202, namely:

"*Motive; good faith.* Usually the courts cannot assume to pass on the good faith of administrative officers in the discharge of their functions, and, where no law has been violated and no statute has made good faith essential to valid action, the acts of administrative officers cannot be attacked in judicial proceedings on the ground that in fact those officers were not governed by the highest standards of impartial and unselfish performance of public duty. *Unless the administrative action is tainted by malice, fraud, or corruption, the courts are concerned only with the product, not with the motives which produced it,* and if the interpretation placed by an administrative officer on the law is a reasonable one, and the officer's conduct is within the scope of his authority, and is not capricious or arbitrary, the officer's motive is immaterial and cannot subject him to judicial interference." (emphasis added)

The source cited for the comments above in Am. Jur. 2d and in C.J.S. is *Louisville and Jefferson Cty. Metropolitan Sewer Dist. v. Joseph E. Seagram & Sons, Inc.,* 307 Ky. 413, 211 S.W.2d 122 (1948) wherein it is stated:

"It is firmly settled that the courts will not inquire into motives which impel or the expediency or wisdom of legislative or administrative action, for that does not affect its legality or validity. (citing authorities) *Unless it is tainted by malice, fraud or corruption, the courts are concerned only with the product and not the motives which produced it."* *Id.* at 418, 211 S.W.2d at 125. (emphasis added)

The holdings of this Court have been similar in nature. In *Albert v. Public Service Comm.,* 209 Md. 27, 120 A. 2d 346 (1956) this Court speaking through Judge Collins said:

"As Judge Oppenheimer expressed it in the article cited in 2 Md. L. R., *supra, 209:* 'Where the determination of the administrative tribunal is essentially legislative in character or where it does not directly affect vested rights of liberty or property, the Court will not review the exercise of discretion, unless it can clearly be shown that the power of the tribunal was corruptly or fraudulently used.' *Wiley v. County Commissioners,* 51 Md. 401; *Murphy v. State Roads Commission,* [159 Md. 7]; *Funeral Directors v. State Board of Undertakers,* 150 Md. 294, 133 A. 62." *Id.* at 40-41.

The thinking behind the above rule was well summed up in *Wiley v. School Commissioners,* 51 Md. 401 (1879) by Chief Judge Bartol for this Court when he said:

"If every dispute or contention among those entrusted with the administration of the system, or between the functionaries and the patrons or pupils of the schools, offered an occasion for a resort to the courts for settlement, the working of the system would not only be greatly embarrassed and obstructed, but such conten-

tions before the courts would necessarily be attended with great costs and delay, and likely generate such intestine heats and divisions as would, in a great degree, counteract the beneficent purposes of the law." *Id.* at 406.

In *Murphy v. State Roads Commission,* 159 Md. 7, 149 A. 566 (1930) controversy existed as to the location of what is now known as Maryland Route 404 running from a point then known as the "Sour Apple Tree" to the Delaware State line, being the current route from the Bay Bridge to Delaware resort areas. A bill was filed in equity to restrain the Commission from proceeding with the building of the road, contending that the selection of the proposed route was a gross abuse of discretion and overlooked the convenience and necessities of the public. A full hearing was held. Judge Offutt for our predecessors said:

"As a necessary incident of the authority to determine the location of roads to be incorporated in the general system, the commission is given the power of considering different roads and routes, and of selecting those which will in their judgment best serve the public interest, and ordinarily the only limitation upon the discretion, thus given, is that it shall be fairly and honestly exercised, and that private property may not be taken for an improvement for which there is no public necessity. Within those limits, whether wise or unwise, the decision of the commission is conclusive and not subject to judicial review." (citing authorities) *Id.* at 14.

He then went on to conclude that there was no abuse of the discretion vested in the Commission and it would not be reviewed.

Testimony on behalf of the complainant was never completed. Therefore, the chancellor was not in a position to make a final determination as to the propriety of the action of the administrative agency. Had Vulcan rested at the end of the testimony presented, we would have no difficulty in approving the chan-

cellor's order. Vulcan not having completed its presentation of evidence, we are obliged to remand this case under Maryland Rule 871 for further proceedings.

> *Remanded for further proceedings without affirmance or reversal; costs to abide the final result.*

BARNES, J. concurring:

I concur in the result in this case, but I have grave doubts that this Court should approve, even by way of dicta, the federal rule, specifically applicable to the Federal Trade Commission but stated as applicable to all federal commissions, in regard to the scope and limitations upon the investigatory powers of administrative commissions, as enunciated by the Supreme Court of the United States in *United States v. Morton Salt Company*, 338 U. S. 632, 70 S. Ct. 357, 94 L. Ed. 401 (1950).

Our obligation to protect the life, liberty and property of Maryland Citizens and the property of corporations from denial of due process of law under Article 23 of the Maryland Constitution may well require us to hold a tighter rein upon the activities of Maryland administrative bodies than the decisions of the federal courts seem to indicate they will hold. I think that it would be wiser to await a full record squarely presenting the issue of due process in this sensitive constitutional area, before indicating our approval of any applicable rule in regard to scope or limitations upon the investigatory powers of Maryland administrative bodies.